[Civ. No. 6238.   Second Appellate District, Division Two.—October 17, 1929.]

MAY RATH, Appellant, v. GEORGE M. BANKSTON et al., Respondents.

Macdonald & Thompson and Frankley & Spray for Appellant.

David D. Stuart and Hubert Starr for Respondents.

BURNELL, J., *pro tem.*—The plaintiff herein appeals from a judgment for the defendants in an action for damages for personal injuries sustained by reason of a collision between the automobile in which she was riding as a guest and a truck and trailer owned and operated by defendants.

The accident occurred at about 4:30 A. M. of March 7, 1925. Appellant, a young woman, had gone out for a drive with one Clarence Habecker. Starting from Los Angeles at about 8 o'clock in the evening of the preceding day they had driven to Santa Monica in Habecker's touring car and to a point somewhere on the highway running northwest of Santa Monica and along the ocean shore. Here the car was parked for several hours while the two young people "watched the waves." Whether or not the waves were wild and what, if anything, they were saying does not appear in the record before us nor is it pertinent to the issues in the case. They started on their homeward journey shortly. after midnight, but were compelled to stop en route to Los Angeles for repairs to a broken gas line, so that it was about half-past four in the morning when they reached the vicinity of the intersection of Coronado Street with Sunset Boulevard in that city, along which latter thoroughfare Habecker was driving in an easterly direction. Appellant was seated in the front seat of the automobile beside Habecker, in a reclining position, when the crash occurred. The three-ton truck of respondents, with a five-ton trailer

attached to it, had run out of gasoline and had been left where it stopped when that occurred, on the south side of Sunset Boulevard, between Coronado and Waterloo Streets, "at a point about five feet south of the southerly car track on said Sunset boulevard"—to quote from the findings. The court found that at the time of the collision a red tail-light was burning at the rear of the trailer. There was also testimony that the truck driver was standing at the rear of the trailer, waving his arms to signal approaching traffic. Into the rear end of the trailer the car driven by Habecker crashed, with the result that appellant received severe and in all probability permanent injuries. The court found, also, that at the time and place of the accident "the sun had not risen and was not shining, the street lamps were not lighted; the weather was clear and it was sufficiently light so that said truck and trailer were visible for a distance of one hundred and twenty feet or more away, and the tail light on said trailer was visible for at least one ordinary city block toward the rear."

Appellant insists as grounds for a reversal that certain of the findings are unsupported by, and, indeed, are contrary to, the evidence. The findings thus attacked may be briefly summarized as follows: First, that the truck became disabled and stopped without any negligence on the part of defendants; second, that the plaintiff was guilty of contributory negligence, and, third, that the leaving of the truck in the street was not the proximate cause of the collision. Appellant further urges that the court abused its discretion in refusing to allow her to introduce certain testimony as to the feasibility of moving the truck and trailer after the reopening of the case for the purpose of taking some additional evidence, and that a new trial should have been granted on the ground of newly discovered evidence.

The testimony as to the stopping of the truck and its presence in the street is uncontradicted and is substantially as follows: The truck and trailer, driven by one Case, who was in the employ of respondents, left Santa Barbara for Los Angeles about 10 o'clock of the day preceding the accident. It was returning empty, after delivering a load of water-pipe. When the truck left Los Angeles on its northerly trip the gasoline tank was filled to its capacity of thirty

gallons, and at Ventura, which is approximately sixty-five miles from Los Angeles, fifteen gallons more were added. On the return trip the fuel supply was again replenished at Ventura, and the tank contained twenty-five gallons when the truck left that city. This was the method ordinarily followed by Case and defendants' other driver engaged in heavy hauling between Los Angeles and Santa Barbara, and on no previous occasion had a truck run out of gasoline. In fact, between five and ten gallons usually remained in the tanks on arrival back in Los Angeles. On this particular trip, however, the truck ran out of gasoline while proceeding along Sunset Boulevard, stopping quite suddenly at the point where, about five minutes later, the automobile in which appellant was riding crashed into it. There was no evidence as to any leakage from the gasoline tank, breakage of the gas line or other mechanical defect in or about the truck. It was equipped with a forced feed system, with an air gauge to indicate the pressure of gasoline flowing into the carbureter, and just prior to its stopping this gauge had registered a pressure of three pounds. The driver of the truck had no warning that it was about to run out of gasoline until it ''just stopped all of a sudden . . . just like turning the switch off,'' and the air gauge ''just went down in a second.'' The driver immediately set his brakes, the truck and trailer then being at the point hereinabove described. Here there is a slight grade downhill from east to west. The driver testified that it would have been impossible to have released the brake and allowed the truck to coast down and to the right hand or southerly curb, because ''you can't steer your trailer,'' and that in order to bring the two vehicles to the curb the trailer would have had to be disengaged from the truck and manipulated by one man while another would have been required at the brakes ''to keep the trailer from getting away.''

While there is some conflict in the evidence as to the presence of the driver at the scene of the accident and as to the tail-light on the rear of the trailer, the findings of the court as to these matters are amply supported by testimony that when the truck stopped the driver at once walked back ''to make sure my lantern was lit'' and that he found that it was and that the globe (it was a kerosene lantern with a red globe) was clean and that he remained

there up to the moment of the accident, flagging approaching cars with his arms. He further testified that he saw the car driven by appellant's friend when it was about two blocks away and "waved at him when he was half a block away," and that he was then going "faster than the other machines that came along there," and between thirty-five and forty miles per hour; also that the impact pushed the truck and trailer "ahead about three or four feet and jack-knifed" them. The truck driver also testified that he was expecting another truck and trailer, which was making the same trip with him, to come along and assist him, but that the driver of the other truck had taken a different route after arriving at Hollywood Boulevard and had gotten ahead of him, so that while this route also led by the scene of the collision his companion driver had passed it a few minutes prior to the arrival of the truck involved in the accident, which, as we have said, occurred about five minutes after the truck had stopped.

It is in evidence that at the time of the accident there was in effect an ordinance of the city of Los Angeles making it unlawful "for the operator of a vehicle to stand said vehicle . . . at any place in the roadway where the two right wheels of the vehicle are more than one foot distant from the regularly established curb line. . . . " If, in view of the testimony above summarized, we are to hold that the court was in error in its findings of lack of negligence on the part of respondents, we must do so on the theory that it is negligence as a matter of law for the operator of a motor vehicle to allow it to run out of fuel under any and all circumstances. This we are not prepared to do.

■ Generally speaking, it is the duty of one driving a motor vehicle along a public highway to see that it is properly equipped so that it may be at all times controlled to the end that it be not a menace to the safety of others or of their property. The law requires that such a vehicle be equipped with brakes adequate to its quick stopping when necessary for the safety of its occupants or of others, and it is equally essential that it be maintained in such a condition as to mechanical efficiency and fuel supply that it may not become a menace to, or an obstruction of, other traffic by stopping on the road. But if the person in charge of such vehicle has done all that can be reasonably expected

of a person of ordinary prudence to see that his vehicle is in proper condition, and an unforeseen failure of a part of his equipment occurs, it does not necessarily follow that he must be deemed guilty of negligence as a matter of law. This view is well illustrated by the case of *Giorgetti* v. *Wollaston,* 83 Cal. App. 358 [257 Pac. 109, 110]. There one of the plaintiffs had been riding in a Ford truck driven by her husband. The front lamps commenced to grow dim, whereupon the husband stopped the truck ''on the right hand side and off the paved portion of the highway with the exception that the left wheels rested thereon six or seven inches from the edge.'' He alighted, adjusted the lamps, consuming from seven to ten minutes in so doing, and then passed around the vehicle, on the side resting on the pavement, to the rear. While so doing he was struck by the defendant's machine, which also collided with the truck, and as a result both the plaintiffs received physical injuries. The Motor Vehicle Act in force at the time of the accident contained a section reading as follows: ''No person shall leave standing, or cause or permit to be left standing upon the main traveled portion of any public highway, a vehicle undergoing repair, or which has been stopped for the purpose of having repairs made thereon, or for the purpose of camping; provided, however, that this provision shall not apply to a vehicle which shall be disabled, while on such main traveled portion of the highway, in such manner and to such extent that it shall be impossible to avoid stopping such vehicle on said main traveled portion of the highway, and impracticable to remove the same therefrom until repairs shall have been made.'' The testimony was conflicting as to whether it would have been practicable, on the night of the accident, to have moved the truck entirely off the pavement. The appellant, contending that respondents were guilty of contributory negligence, relied on the facts that (a) there was no tail-light on the truck, (b) that the car had been stopped and left on the paved portion of the highway because of the failure of the head-lights, and that to so leave it was negligence. Answering the contention the court said: ''The defect in the headlights of the truck, which led respondents to stop, was, as fairly appears from their testimony, due to a condition which developed a few minutes before the car was stopped and was not

caused by lack of due care on their part; but the absence of lights either in front or in the rear rendered the operation of the truck at the hour mentioned unlawful, and it was the duty of respondents to remove the same from the main traveled portion of the highway (Motor Vehicle Act, secs. 13 and 20 [w]). The failure of any person to perform a duty imposed upon him by law raises a presumption of negligence; and if such negligence proximately contributes to his injury he cannot recover (*McKune* v. *Santa Clara etc. Co.,* 110 Cal. 486 [42 Pac. 980]; *Berkovitz* v. *American River Gravel Co.,* 191 Cal. 195 [215 Pac. 675]; *Shimoda* v. *Bundy,* 24 Cal. App. 675 [142 Pac. 109]). This presumption, however, is not conclusive, but may be overcome by evidence that the failure was excusable or justifiable under the circumstances and not inconsistent with the exercise of due care (*Berkovitz* v. *American River Gravel Co., supra; Cragg* v. *Los Angeles Trust Co.,* 154 Cal. 663, 667 [16 Ann. Cas. 1061, 98 Pac. 1063]; *Harris* v. *Johnson,* 174 Cal. 55, Ann. Cas. 1918E, 560, L. R. A. 1917C, 477, 161 Pac. 1155]; *Dewhirst* v. *Leopold,* 194 Cal. 424 [229 Pac. 30]; *Western Indemnity Co.* v. *Wasco Land & Stock Co.,* 51 Cal. App. 672 [197 Pac. 390]; *Graybiel* v. *Auger,* 64 Cal. App. 679 [222 Pac. 635]; *Mitsuda* v. *Isbell,* 71 Cal. App. 221 [234 Pac. 928]). In the present case it does not appear that the time consumed in adjusting the lamps was unreasonable, and, as stated, there was testimony which, if believed by the jury, tended to show that the condition of the highway east of the pavement was such at the time of the accident as to render it impracticable to remove the truck farther in that direction.'' The judgment for plaintiff was affirmed and a hearing in the Supreme Court was denied.

So in the present case we cannot say that the learned trial judge was unjustified in regarding the failure of respondents to maintain sufficient fuel in the truck's gasoline tank as excusable under the circumstances, bearing in mind that exactly the same procedure as to refilling the tank was followed as had been found sufficient on previous trips of the same and similar trucks over the same route. Whether gasoline had been syphoned from the tank by some thief while the driver was at dinner after taking on gas at Ventura, as suggested by respondents, is but a matter of speculation with no foundation in any of the evidence in the

record. The fact remains that the truck had reached its destination in Los Angeles on previous trips with several gallons unexpended. We do not think the law requires that the driver of a motor vehicle, who has seen to it that his car contains the amount of fuel which his past experience has found oversufficient for the journey in hand, should alight at intervals to examine his gasoline supply at the risk of being held guilty of negligence as a matter of law if he fails to discover that it is nearly exhausted. We are fortified in this line of reasoning by that of the opinion of the Supreme Court in *Berkovitz* v. *American River Gravel Co.,* 191 Cal. 195 [215 Pac. 675, 677], which case, like that of *Giorgetti* v. *Wollaston, supra,* is also authority for the statement that violation of an ordinance is not conclusive proof of negligence, but may be excused where it appears that such violation was unintentional and justifiable under the circumstances. We quote from the opinion: ''Defendant's proposed instruction No. 14, which was refused by the court, among other things, stated: 'Unless you believe from the evidence that defendant failed to use reasonable or ordinary care to keep said lamp [the tail light] lighted and that said failure, if such you believe there was, directly and proximately caused or contributed to the collision,' the plaintiff cannot recover. The court gave instruction No. 5, proposed by plaintiff, as follows: 'You are instructed that the law of this state required at the time of the collision every motor-truck while on the public highway during the period from one-half hour after sunset of one day to one-half hour before sunrise of the next day to carry at the rear a lighted lamp exhibiting a red light. If you believe from all the evidence in this case that the motor-truck belonging to the defendant was being driven by the agent of the defendant in the course of his employment during this period of time without such a lighted lamp, then the defendant was guilty of negligence, and if you believe that the plaintiff, Virginia Berkovitz, was, without fault on her part, injured by reason thereof, your verdict should be in favor of the plaintiff.' Instruction No. 5 is a correct statement of the law in most cases where the violation of a statute is charged. By the exercise of ordinary care, the driver of a motor vehicle at night would always know whether the headlights were burning and in such a case instruction No. 5

would be strictly accurate. The tail light, however, is not in the immediate view of the driver, whose attention is ordinarily directed ahead, and it cannot be the intention of the law that a watchman must be maintained over the rear light to observe whether it is constantly burning. It is well known that with the best of care coal-oil lights, as well as electric lights, sometimes go out. If one drives a motor vehicle in the night-time when he knows, or in the exercise of ordinary care ought to know, that the tail light is not burning, he is guilty of negligence. While ignorance of the law is no excuse, ignorance of the fact, where ordinary care has been exercised, is a sufficient excuse. Violation of an ordinance 'is presumptively an act of negligence and conclusively so until rebutted by evidence that it was justifiable or excusable under the circumstances.' (*Mora* v. *Favilla,* 186 Cal. 199 [199 Pac. 17]; *Harris* v. *Johnson, supra; Gooding* v. *Chutes Co.,* 155 Cal. 620 [18 Ann. Cas. 671, 23 L. R. A. (N. S.) 1071, 102 Pac. 819]; *Cragg* v. *Los Angeles Trust Co.,* 154 Cal. 660, 667. [16 Ann. Cas. 1061, 98 Pac. 1063]; *Baddeley* v. *Shea,* 114 Cal. 6 [55 Am. St. Rep. 56, 33 L. R. A. 747, 45 Pac. 990].) 'The only question remaining open on this point is whether conclusive proof of the violation of such a statute or ordinance is also conclusive proof of negligence. Some courts have held that it is, and some that it is not. But the true rule is really perfectly plain. The violation of such a law, if left without explanation or excuse, is conclusive of negligence, but it may be excused. . . . If some good excuse appears, which would be a sufficient defense to an action for the penalty imposed by the law . . . then the law is not really violated. We find but few cases in which this is clearly stated; but they deserve to take precedence of all the others, as they reconcile the principle upon which the others were actually decided.' (Shearman & Redfield on Negligence, 6th ed., sec. 467.) The defendant was entitled to an instruction embodying, as did this one, the substance of the rule as herein stated. If the jury believed the testimony of the driver to the effect that the tail light was burning three or four blocks east of the place of the accident they might have concluded, under proper instructions, that he was not guilty of negligence even though the light was out when the collision occurred.''

This case is not parallel with *Keiper* v. *Pacific Gas &
Electric Co.*, 36 Cal. App. 362 [172 Pac. 180] , *Flynn* v. *The
Bledsoe Co.*, 92 Cal. App. 145 [267 Pac. 887] , or *Winsky* v.
*DeMandel*, 204 Cal. 107 [266 Pac. 534], in all of which the
collision producing the injury was with a vehicle left standing
in the street.   In the first of these cases the defendant, ''with-
out any cause or reason for so doing, other than his desire
to step across the street into a garage,'' had left his auto-
mobile ''standing unoccupied and unattended upon and
across'' a street-car track in the middle of a city street,
without even setting its brakes.   In the second case a truck
over eighteen feet in length had been parked at an angle
of almost ninety degrees with the curb on a heavily traveled
street fifty-two feet wide, the portion of which available
for traffic at the time being reduced to about forty feet
by a pile of building material in front of a building being
erected on the opposite side of the street.   This was in vio-
lation of an ordinance requiring parking at an angle of
approximately forty-five degrees.   In the third case above
referred to a laundry truck had been left by its driver
standing in a street intersection in an angular position and
directly in the path of pedestrian travel, and the plaintiff,
forced to go around it to cross the street, had been struck
by another automobile.   In none of these cases was there
the slightest justification or excuse shown for a wilful and
deliberate violation of the law.

We are satisfied that the court below committed no error
in finding that respondents were not guilty of negligence.

While our determination of the matter above con-
sidered must of necessity decide this appeal, we do not
desire it to be understood that we approve of the trial
court's finding on the subject of appellant's alleged con-
tributory negligence.   It is erroneous for two reasons:
First, because there can properly be no finding that a plain-
tiff is guilty of contributory negligence where the defend-
ant has been found guilty of no primary negligence.   The
two are utterly inconsistent.   Second, because in our opin-
ion there is no evidence to support such a finding in this
case.

Taking up the first of these reasons, we find that ''con-
tributory negligence'' is defined as ''such an act or omis-
sion on the part of the plaintiff, amounting to a want of

ordinary care, as concurring or cooperating *with the negligent act of the defendant,* is a proximate cause or occasion of the injury complained of.'' (Beach on Contributory Negligence, p. 7; *Wardlaw* v. *California Ry. Co.,* 5 Cal. Unrep. 225 [42 Pac. 1075]; *Gaster* v. *Hinkley,* 85 Cal. App. 55 [258 Pac. 988].) (Italics ours.) When, therefore, there is, as found by the court below, no negligence on the part of the defendant, there can be no such thing as *contributory* negligence on the part of the plaintiff. (*Murray* v. *Southern Pac. Co.,* 236 Fed. 704; *Gatliff Coal Co.* v. *Sumner,* 196 Ky. 592 [245 S. W. 144]; *Ballew* v. *Asheville etc. Ry. Co.,* 186 N. C. 704 [120 S. E. 334]; *Ross* v. *St. Louis & S. F. Ry. Co.,* 93 Kan. 517 [144 Pac. 844].)

Furthermore, we find no evidence to support the finding. The plaintiff was a guest in Habecker's car, having no control or direction over its route or the manner of driving it.  The manifest negligence of Habecker in driving his car into the trailer equipped with a red lantern visible for an ordinary city block is not imputable to her. The facts disclosed by the record in this case are closely akin to those in the very recent case of *Marchetti* v. *Southern Pac. Co.,* 204 Cal. 679 [269 Pac. 529], where the deceased, for whose death damages were sought to be recovered, had been riding as a guest in his employer's foreman's automobile when the latter collided with a train of defendant company. A nonsuit had been granted in the trial court ''solely upon the ground that the evidence showed that the deceased was guilty of contributory negligence which proximately caused his death.'' Reversing the order granting the nonsuit the court said: ''The evidence bearing upon this point was undisputed. The deceased was riding with Connors under the latter's direction, and had no control whatever over the operation of the automobile in which they were riding. There can be no question of Connors' negligence in driving the machine on to the railroad crossing without taking the proper precautions to observe whether a train was or was not approaching. The negligence of the driver of a machine, however, cannot be imputed to a passenger therein in the absence of any evidence showing that the latter exercised some control over the driver or that he possessed the power to supervise or direct the manner in which the automobile should be operated (*Bryant* v. *Pacific*

286

*Electric Ry. Co.*, 174 Cal. 737 [164 Pac. 385]; *Irwin* v. *Golden State Auto Tour Corp.*, 178 Cal. 10 [171 Pac. 1059]; *Nichols* v. *Pacific Electric Ry. Co.*, 178 Cal. 630 [174 Pac. 319]). In this case there was no such evidence. The deceased, as we have before stated, was simply going with Connors, in the latter's machine, for the purpose of attending to some matter of business regarding their employer's property. Connors was the foreman of his employer, and the deceased was subject to his orders. Connors had entire control of the machine and was operating the same without any assistance or direction on the part of the deceased. If the deceased, therefore, was guilty of contributory negligence it must have been by some act either of commission or omission on his part which of itself constituted contributory negligence. There was no evidence in the case tending to show any such act of negligence on the part of the deceased. All the witnesses agree that the deceased was simply sitting in the machine at the side of Connors and that he was looking straight ahead of him while they were traveling along 'A' street and just before their machine collided with the defendant's train. No witness testified, nor is there any evidence from which it may be inferred, that the deceased exercised or attempted to exercise any control or direction over the operation of the automobile by Connors. Respondents argue, however, that the evidence shows that as the deceased was looking straight ahead he could not have been looking to his left and along the railroad track on which the train was approaching, and that this failure of the deceased to look for the approaching train constituted contributory negligence on his part, which would defeat a recovery in this action. This argument, we think, is satisfactorily and completely answered by the following statement of the law on this subject found in 3 Cal. Jur., pages 853 and 854: 'A passenger in a motor vehicle approaching a railway crossing is under no legal obligation to warn the driver, either of the presence of the tracks or of an approaching train, the view being unobstructed and the driver reasonably competent and vigilant. And while it is the passenger's duty to look and listen, it is not his duty to stop for a successful observation, since he has no authority over the driver, but is wholly subject to the latter's action. The passenger has a right to suppose that the driver, on ap-

proaching a railway crossing with which he is familiar, will exercise due care for the protection and safety of his passengers, and ·that even when so near the crossing as to be in apparent danger of collisión with an oncoming train he will or may take some action which will avert an accident. Nor is the passenger obliged, even when the danger of collision becomes suddenly imminent, to displace the driver, seize the operating levers and endeavor to avoid the impending catastrophe. Nevertheless, it has been said that the passenger must look out for himself, and may not, in a place of danger, as on approaching a railway crossing, rely blindly on the driver. But a passenger in a machine operated by another cannot be said as a matter of law to have been negligent in not calling the chauffeur's attention to the danger of a collision.' Respondents contend that under the authority of *Thompson* v. *Los Angeles etc. Ry. Co.*, 165 Cal. 748 [134 Pac. 709], and *Parmenter* v. *McDougall*, 172 Cal. 306 [156 Pac. 460], a passenger in a vehicle operated by another is bound to exercise ordinary care for his own safety, and that if such passenger is aware that the operator is carelessly rushing into danger it may be incumbent upon him to take steps for his safety. These cases undoubtedly contain a correct statement of the law upon the subject of a passenger's duty in case of known danger. They have little or no application to the present case, for the reason that it does not appear that there was anything that could have been done by the deceased which would have averted the collision.''

We deem the decision from which we have just quoted decisive on this point. The error in finding appellant guilty of contributory negligence is, however, immaterial in view of our conclusion that the finding as to nonnegligence of the respondent is proper and controls the case on this appeal.

Appellant urges that the court below abused its discretion ''in refusing to allow plaintiff to show the truck and trailer could readily have been moved, after a reopening of the case to take certain additional testimony.'' It appears from the reporter's transcript that after the case was submitted it was ·upon motion of plaintiff reopened and the testimony of an alleged eye-witness to the accident was taken. No questions were propounded to this witness as to

the feasibility of moving the truck and trailer and the record does not show that any testimony whatever relating to this subject was offered by appellant or excluded by the court. This completely disposes of this point.

Appellant next urges that a new trial should have been granted on the ground of newly discovered evidence. The affidavits in support of this motion are to the effect that appellant's counsel hired a truck and trailer similar to those involved in the accident, and by experimenting with them at the scene thereof determined that they could readily be backed to the curb, and hence that the testimony of the witness Case as to the impossibility of this maneuver was false. Apart from the fact that the affidavits failed to disclose facts showing that the evidence referred to therein could not have been discovered in time for presentation at the trial had appellant's counsel used due diligence in preparing the case, we are of the opinion that the court did not abuse its discretion in denying the motion for a new trial on the grounds stated. Newly discovered evidence, designed merely to impeach or contradict the testimony of adverse witnesses, is not a proper basis upon which to grant a new trial. (*Waer* v. *Waer*, 189 Cal. 178 [207 Pac. 891]; *Hanton* v. *Pacific Electric Ry. Co.*, 178 Cal. 616 [174 Pac. 61]; *Chalmers* v. *Sheehy*, 132 Cal. 459 [84 Am. St. Rep. 62, 64 Pac. 709]; *Wood* v. *Moulton*, 146 Cal. 317 [80 Pac. 92]; *People* v. *Anthony*, 56 Cal. 397.) The fact that Case swore falsely (assuming such to be the fact merely for argument's sake) would not justify the contention that appellant was taken by surprise by his testimony. There is nothing to show that she was led to believe that his testimony would be other than it was, or that she did not have ample time to prepare to meet every issue of fact relevant to the cause. As said in *Pico* v. *Cohn*, 91 Cal. 129 [25 Am. St. Rep. 159, 13 L. R. A. 336, 25 Pac. 970], a litigant at the trial "must be prepared to meet and expose perjury then and there." The testimony of Case was given on May 21, 1926, and it would seem that appellant had ample time to make any inquiries as to its probable truth or falsity, as well as any actual test on the ground between that time and May 24th when she rested her case. Moreover, the affidavits on motion for new trial show that the "test" was actually made on May 25, 1926, and as we have noted when the case was re-

opened on May 27th the record shows no offer of this testimony by appellant.

We deem it unnecessary to further prolong this opinion by discussion of the other points urged by appellant, as our views above expressed are determinative of this appeal.

Judgment affirmed.

Craig, Acting P. J., and Thompson (Ira F.), J., concurred.