[Civ. No. 4383. Third Appellate District.—February 9, 1932.]

HORTENSE SILVEY et al., Respondents, v. GEORGE G. HARM et al., Appellants.

564

Levinsky & Jones for Appellants.

Gumpert & Mazzera for Respondents.

THOMPSON (R. L.), J.—This is an appeal from a judgment which was entered upon the rendering of a verdict for damages for the death of Joseph Silvey resulting from an automobile collision.

On the night of March 4, 1930, the defendant Lindsay was driving a truck and trailer belonging to the defendant copartnership, Harm & Frasher, easterly toward Fresno along the Tracy highway. The loaded truck and trailer weighed about thirty-two tons. A similar truck and trailer belonging to the same copartnership was proceeding along this highway just ahead of the Lindsay truck. It was a dark and rainy night. The highway was straight and level at the point where the accident occurred. There is a twenty-foot paved strip along the center of the highway, with an eight-foot dirt shoulder on either side thereof. From the edge of the concrete the roadway slopes down gradually to the extreme border of the right of way, a distance of thirty-four feet therefrom. The Lindsay truck stalled several times that day for lack of power. This was due to a defective vacuum tank or temporary obstruction of the circulation which prevented the normal feeding of gasoline. On the return trip, when the truck reached a point near Banta cross-road, about three miles east of Tracy, the gas was again shut off. The Lindsay truck was then running at the rate of about twenty or twenty-five miles an hour. After rolling a considerable distance on its own momentum, the truck came to a stop on the right-hand side of the paved portion of the roadway. The driver of the truck placed a burning oil flare-pot in the middle of the highway at a distance of fifty or sixty feet to the rear of the stalled machine. He then went forward to the other truck, which had also stopped on the highway from one to three hundred feet in advance of the stalled machine, to procure some gasoline with which to prime his vacuum tank. While he was engaged in doing this, he heard a crash. Upon returning to his truck Lindsay found that a Ford roadster approaching from the rear had collided with the back end of

his trailer. The roadster was badly wrecked and Joseph Silvey, who was the driver and sole occupant of the Ford machine, was dead. He had been killed as a result of the collision. This suit for damages for the negligent killing of Joseph Silvey was instituted by his surviving widow and children. The jury rendered a verdict of five thousand dollars damages. From the judgment which was thereupon entered, this appeal was perfected.

The appellants contend that the judgment is not supported by the evidence; that the deceased was guilty of contributory negligence, and that the court erred in its rulings upon the introduction of evidence and in giving to the jury and refusing certain instructions.

The evidence in the present case adequately supports the implied findings of the jury that the defendants were guilty of negligence in leaving the truck and trailer parked without lights on the paved and main traveled portion of the highway in violation of section 136 of the California Vehicle Act, and also in placing the oil flare-pot in the center of the highway where it was likely to deceive one regarding the location of the stationary truck. Section 136, *supra,* provides, in part:

"No person shall park or leave standing any vehicle whether attended or unattended upon the paved or improved or main traveled portion of any public highway, outside of a business or residence district when it is practicable to park or leave such vehicle standing off of the paved or improved or main traveled portion of such highway; provided, in no event shall any person park or leave standing any vehicle whether attended or unattended upon any public highway unless a clear and unobstructed width of not less than fifteen feet upon the main traveled portion of said highway opposite such standing vehicle shall be left for the free passage of other vehicles thereon.

"The provisions of this section shall not apply to the driver of any vehicle which is disabled while on the paved or improved or main traveled portion of a public highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such vehicle in such position."

The parked truck and trailer occupied at least eight feet of the twenty-foot paved portion of the highway. This left

unobstructed only twelve feet of the pavement. ■ The appellants contend it was impracticable, impossible and dangerous to drive the truck and trailer upon the dirt shoulder adjacent to the paved portion of the highway at the place where the accident occurred because the shoulder was too soft from the effect of rain and too insecure to sustain the loaded vehicles with their thirty-two tons of weight, and because the sudden obstruction of gas from the vacuum tank stalled the truck without an opportunity to drive off of the main traveled portion of the highway. These assertions were controverted by the plaintiffs and became the chief issues at the trial. Upon these questions there was a conflict of evidence. The implied findings of the jury upon these issues are against the contentions of the appellants. This court is therefore bound by the determination of the jury.

■ The driver of a truck is not guilty of negligence if his machine is parked on the main traveled portion of the highway through no fault of his own. (*Rath* v. *Bankston*, 101 Cal. App. 274 [281 Pac. 1081].) If the automobile is disabled while it is traveling along a public highway so that it is impracticable or impossible to drive it off of the main traveled portion of the highway, the driver is not guilty of negligence in permitting it to remain there until, by the exercise of reasonable diligence, it can be removed. (Sec. 136, *supra*.)

■ The phrase "main traveled portion of a public highway" as it is used in the above-quoted section of the California Vehicle Act, has reference to the paved portion of the highway only, where such pavement exists under circumstances similar to those in the present case, wide enough for the traffic, and which is mainly used for that purpose. In other words, the dirt shoulders adjacent to the paved portion of a highway are not deemed to be a part of the main traveled portion of the highway, under such circumstances as exist in this case. In an open country district normal traffic is ordinarily confined to the paved portion of the highway. The shoulders are used to serve in emergencies or during congested traffic. Any other construction of this statute would permit the parking of a machine on any twenty-foot concrete paved portion of a highway where a

five-foot dirt shoulder exists. This is in conflict with the very purpose of the statute.

 The jury was warranted in holding that Lindsay had ample opportunity to drive the truck and trailer off of the paved portion of the highway, and that the dirt shoulder was solid enough to sustain the load. One witness testified that the right-hand wheels of the truck actually rested upon the dirt shoulder where it was parked immediately after the accident occurred. The vacuum tank stopped feeding gas to the engine several times previously on that same trip. As a result of this defect the engine had stalled several times before. The driver of the truck therefore had warning that this might occur again. When the vacuum tank stopped feeding gas the engine ceased operating. The evidence shows that after the gas stopped feeding the truck and trailer rolled a considerable distance on its own momentum. The jury had a right to assume that during the interval between the time when the vacuum tank stopped feeding gas, just before the accident occurred, and the actual stalling of the machines, Lindsay had ample opportunity to run them off of the concrete and park them on the shoulder thereof. These were questions for the determination of the jury. If it was practicable to park the truck and trailer on the shoulder of the highway or at least far enough off of the concrete portion thereof to leave an unobstructed width of fifteen feet of the main traveled portion opposite the standing vehicles, then the defendants were guilty of negligence *per se* in violating the provisions of section 136, *supra.*

 The evidence is sufficient to sustain the implied finding of negligence on the part of defendant upon another ground. There is substantial evidence that the truck and trailer were left without tail or side lights at the time it was parked on the highway. Mr. Madruga, who passed the truck after it was stalled and before the accident occurred, so testified. The following examination of this witness occurred: "Q. Tell the court and jury whether that truck had any lights on? A. No sir. Q. Did it have any tail light? A. No sir. Q. Or any head light? A. No sir." He also testified that he found the lighted flare-pot fifty or sixty feet behind the trailer in the middle of the highway. "Q. Where was this light . . . on that pavement?

. . . A. It was on the center." The question as to whether this warning light was placed in the center of the paved portion of the highway, instead of behind the stalled truck, and the question as to whether this act constituted negligence were also problems for the determination of the jury. To find a warning light in the very middle of the traveled portion of the highway might tend to deceive the driver of an approaching vehicle regarding the side of the light upon which the danger existed. The light may have become a trap which lured the deceased into turning to the right of the flare-pot directly into the truck which was standing without lights on the margin of the paved portion of the highway. It may reasonably be argued, that in the exercise of reasonable precaution, the light should have been placed immediately behind the truck in its natural pathway.

The record will not justify this court in holding as a matter of law that the deceased was guilty of contributory negligence. It is argued that because the Ford machine was found some eight feet behind the trailer, after the crash occurred, this is proof that it must have been running at an excessive rate of speed at the time of the accident. This is not necessarily true. The Ford machine was comparatively light. It is not unreasonable to conclude that if the clutch were released before the crash occurred the Ford might rebound a distance of eight feet as a result of the contact with the heavily laden trailer. In the absence of evidence to the contrary the deceased is entitled to the benefit of the presumption declared by subdivision 4 of section 1963 of the Code of Civil Procedure, that he exercised ordinary care in the operation of his machine. At least the question of his contributory negligence was a problem for the determination of the jury.

Over the objection of the defendants a diagram of the highway depicting the vicinity where the accident occurred was received in evidence for the purpose of illustration. This diagram was inscribed to indicate that the borders of the highway consisted of "oiled rock shoulders". The engineer who prepared the map testified that he took the measurements from which the diagram was prepared only a few days before the date of the trial of the case, and that the shoulders were then covered with oiled rock. At

the time of the accident these shoulders were constructed of dirt. This was testified to by the engineer and conceded by counsel for plaintiffs. The inaccuracy of the diagram with respect to the material with which the shoulders were constructed was fully explained before the map was received in evidence. It was not offered in evidence to prove the nature of the material with which the shoulders were constructed, but merely to illustrate the relative location of objects which were necessarily involved in the subject of litigation. There was no possibility of the jury being misled regarding the material of which these shoulders were composed. It is not contended the map was inaccurate in any other respect.

Maps and charts are competent evidence to furnish a better understanding of the relative location of objects which are necessarily involved in the litigation. They are received in the discretion of the court for the purpose of illustration and to aid the jury in that regard. (10 Cal. Jur. 894, sec. 168; 22 C. J. 910, sec. 1114.) In the authority last cited it is said:

"Whether or not it is proper to admit a map or diagram in any particular case is a question resting in the discretion of the trial court."

It was not error to receive the map in evidence after the inaccuracy had been fully explained by oral testimony. In the case of *Territory* v. *Price*, 14 N. M. 262 [91 Pac. 733], it was held a map was properly admitted in evidence although other evidence tended to show the map was inaccurate in some particulars.

Evidence regarding the defect in the vacuum tank which caused the Lindsay truck to stop several times previously on the same trip from San Francisco, was received over the objection of the defendants. These rulings are assigned as erroneous. This evidence was competent to show knowledge of the defect, on the part of the driver of the truck, which would warn him when the gas was shut off that the truck would soon stop, and enable him to run the machine off the concrete on to the shoulder of the highway while its momentum lasted. This evidence was not introduced for the purpose of showing that the defendants were wilfully operating a machine which they knew to be mechanically defective. It was competent to show that it was

practicable and possible to park the truck off of the concrete even after the gas was shut off. It was a mere circumstance for the jury to consider in determining whether the driver of the machine was negligent in parking the truck on the concrete pavement. The admission of this evidence was therefore not erroneous. It was in response to the issues which ·were raised by the pleadings. The complaint alleges: "The defendant carelessly and negligently stopped and left standing upon the paved and mainly traveled portion of said highway a truck and trailer." The answer alleged, "That the truck became mechanically disabled and unable to proceed, and was compelled to, and did, stop; . . . [and that] it was impossible to move said truck and trailer off of the paved and mainly traveled portion of said highway." Any evidence which tended to prove that the machine was *negligently* parked on the concrete pavement or main traveled portion of the highway was competent. In the case of *Carnahan* v. *Motor Transit Co.*, 65 Cal. App. 402, 408 [224 Pac. 143, 145], it is said:

"It is well settled in this state that negligence may be pleaded in general terms. . . . The effect of this rule . . . is to make admissible in evidence any and all testimony which would tend to prove this allegation of negligence."

The evidence of previous trouble on that same trip with the vacuum tank and consequent stalling of the truck was therefore competent.

On cross-examination of plaintiffs' witness Madruga, the appellants asked the following question: "Had you had anything to drink?" This question was addressed to the time when both this witness and the deceased were attending a party just prior to the time of the accident. An objection to this question was sustained on the ground that it was incompetent. The court said: "I don't think it would make any difference what this man had." To this remark the attorney for the defendants replied, "It might have a great deal to do with this man's ability to see or recollect what happened." This inquiry appears to have been fairly addressed to the question of the sobriety of the witness. His sobriety might reasonably affect the weight of his testimony. Testimony which may tend to show that a witness was so drunk as to materially impair his ability to comprehend or correctly relate what he claims to have seen

or heard respecting the controverted facts, is competent as affecting the weight of his testimony. We are of the opinion the answer to this question should have been allowed. The sustaining of this objection was, however, not prejudicial error, for the reason that all the material portion of the evidence of Madruga was corroborated by other witnesses whose sobriety was not questioned. Reverend Fred C. Becker, a minister, who resided in Tracy, visited the scene of the accident just after it occurred. He testified that he saw the burning flare-pot in the center of the concrete portion of the highway 50 or 100 feet back of the truck. He also testified the truck and trailer had no tail or side lamps lighted. John F. Perry, an employee of the Manteca Cannery, chanced to drive past the scene of the accident just after it occurred. He also testified that the truck and trailer were without lights. No question as to the sobriety of these witnesses was raised. The evidence of Madruga was cumulative and the exclusion of testimony regarding his sobriety at the time of the accident was, therefore, harmless. (2 Cal. Jur. 1022, sec. 608.)

The defendants were not prejudiced by the sustaining of objections to their effort to prove by the witness Canale that the lights on the truck and trailer were ordinarily not dim, but on the contrary were in good condition and reasonably bright. This was not a material issue in the case. The controverted fact was whether the lamps on the truck and trailer were left lighted while the vehicles remained parked on the highway. The question as to whether these lights were dim or bright when they were turned on is immaterial. It did not matter whether the battery was weak or strong. It was not contended the accident occurred because of dim lights on the truck and trailer. Upon the contrary, it was contended they were turned off entirely while the truck and trailer remained parked on the highway, leaving the machines in utter darkness, except for the oil flare-pot which was placed in a position which might lure the deceased into a place of danger.

Over the objection of the defendants, the plaintiffs were permitted to show that the truck and trailer in question had no permit from the state highway commission authorizing the hauling of a gross weight, including the load and the machine, in excess of 22,000 pounds on any

single vehicle, as provided by section 85 of the California Vehicle Act. A *prima facie* showing to this effect was made. There was no attempt on the part of the defendants to disprove this contention. The evidence establishes the fact that the unloaded truck weighed 16,000 pounds; the trailer without a load weighed 12,000 pounds, and the total weight of the load carried by both vehicles was 34,000 pounds. It thus appears that even though the gross weight of the load carried by both machines was evenly divided between the two vehicles, both would be overloaded in violation of section 85, *supra*.

The defendants assert that the loaded truck and trailer were too heavy to make it "practicable" or possible to park them on the shoulder of the highway, yet it appears these two vehicles were illegally loaded with a gross weight which was 18,000 pounds in excess of that which is allowed by statute. In determining whether it was practicable or reasonably possible for the defendants to park the truck and trailer on the shoulder of the highway, the jury had a right to consider the fact that the vehicles were overloaded to the extent of 18,000 pounds in excess of the weight allowed by law. An authorization to carry an excess load might furnish the defendants with some excuse for not parking on the shoulder of the highway, provided it was too soft or insecure to sustain the authorized load. But since the excess load was not authorized, it furnished no such excuse. For this reason the lack of an authorization to carry this excess load was competent. Even though this evidence be deemed to be incompetent for the purpose suggested, we cannot say the defendants were prejudiced thereby.

The appellants assign the uniting of Paris, the driver of the foremost truck, as a party defendant and the examination of this witness under the provisions of section 2055 of the Code of Civil Procedure, as prejudicial error. It is asserted this procedure was adopted by the plaintiffs to enable them to examine him as an adverse witness without being bound by his testimony and that plaintiffs were not in good faith in so doing. While it may be true plaintiffs knew that Paris had no supervision or control over the actual operation of the truck and trailer with which the Ford car collided, we are unable to say he was not made a party defendant in good faith. One of the elements of

negligence upon which the plaintiffs rely was the placing of the lighted oil flare-pot in the center of the concrete pavement. We are unable to say that the plaintiffs knew at the time of the commencement of the action that Paris, who drove his truck in company with Lindsay on this entire trip, may not have placed the oil flare-pot in the middle of the highway. In truth, it does not appear that plaintiffs actually knew Paris had no supervision over the operation of the Lindsay truck, or having the authority to do so, that he had not told Lindsay to drive his truck off the concrete pavement in the event of trouble with his vacuum tank again. The challenged procedure of making Paris a party defendant does not appear to have been prejudicial. We are not prepared to say it was not done in good faith. It did not constitute error.

The appellants charge the court with error in refusing to give to the jury an instruction which contains a declaration of the principle of law to the effect that the burden is on the plaintiffs to prove their allegations of negligence by a preponderance of the evidence. The refusal of this instruction was not erroneous. The essential elements of the rejected instruction are fully covered in another instruction which was given at their request as follows: "You are instructed that the law requires that the plaintiffs prove such alleged negligence. Unless plaintiffs make this proof and show by a preponderance of the evidence such alleged negligence on the part of said defendants, they cannot recover."

The appellants also assign as erroneous three other instructions which were given to the jury at the request of the plaintiffs. While one of these challenged instructions charges the jury upon an immaterial matter which was not an issue in the case, and another instruction omits a material element, they are not prejudicial. The omitted element is covered by other instructions which were given.

The second instruction which is challenged by the appellants charges the jury that, except by special permit of the state highway commission, it is unlawful for a truck to operate upon the state highway with a load, including the weight of the machine, in excess of 22,000 pounds. The unlawful weight of the truck and trailer which was involved

in this accident was not a direct issue in the case. We have previously discussed the effect of the evidence upon this subject. This instruction may properly have been omitted. However, we are of the opinion it was not prejudicial. Even though it be deemed to be erroneous, it does not constitute reversible error, for the reason that it does not appear there is a miscarriage of justice in the determination of the present cause.

The giving of the third challenged instruction is assigned as error because it charges the jury that if it is found that the defendants unnecessarily parked their truck on the paved portion of the highway it would constitute negligence *per se*. In other words, this instruction declares, in effect, that if the truck was found unlawfully parked on the concrete portion of the highway, the burden would then rest upon the defendants to affirmatively show that such parking ''was necessary under the circumstances of the case''. We think this instruction is substantially correct. It is couched in language which we do not approve, which is somewhat stronger than the declarations of the statute, but we think it could not have been misunderstood by the jury. Section 136 of the California Vehicle Act does declare that it is unlawful for any person to park or leave standing any vehicle ''upon the paved or improved or main traveled portion of any public highway, outside of a business or residence district *when it is practicable* to park or leave such vehicle standing off of the paved or improved or main traveled portion of such highway''. A violation of the statute by the driver of a vehicle will constitute negligence *per se,* which shifts the burden to the party so charged, to show that it was not ''practicable'' for him to move his machine off of the paved or main traveled portion of the highway. This was the very issue in the present case.

Finally the appellants charge the court with error in giving to the jury an instruction to the effect that it is essential that an automobile which is operated on the state highway shall be maintained in a condition of mechanical efficiency and fuel supply so that it may not become an obstruction to other traffic on the road. This appears to be a mere harmless truism. The language was taken from the opinion in the case of *Rath* v. *Bankston,* 101 Cal. App. 274 [281 Pac. 1081]. There is no statement in this charge

that one would necessarily be guilty of negligence merely because his automobile became mechanically impaired or that his fuel supply was exhausted. It is true that the driver of a motor vehicle would not be guilty of negligence if his machine became mechanically defective or the gas supply were obstructed through no fault on his part. If one had previous knowledge of a defect which was likely to cause his machine to become a menace to traffic, and he failed to use ordinary care to repair or correct the defect, he might be liable for any damage which resulted therefrom. In 42 C. J. 893, section 596, it is said:

"It is the duty of the operator of a motor vehicle to see that it is in a reasonably safe condition before operating it on a public highway, and if he fails to exercise ordinary care in this respect and injuries are caused by reason of defects in the machine which might have been discovered and repaired by such care, he is liable for such injuries."

The jury was elsewhere instructed that the defendants were not liable except for a lack of ordinary care in the operation of the truck.

The jury was elaborately instructed on every essential issue which is involved in this case. The evidence abundantly supports the implied findings of negligence on the part of the defendants proximately contributing to the death of Joseph Silvey. The amount of the judgment is very reasonable. If it may be said the charge to the jury contains some inaccuracies, we are still of the opinion the judgment should be affirmed under the provisions of section 4½ of article VI of the Constitution of California for the reason that it does not appear the error complained of resulted in a miscarriage of justice.

The judgment is affirmed.

Preston, P. J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 10, 1932, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 8, 1932.