[L. A. No. 17813. In Bank. Feb. 6, 1942.]

DAVID MICHAEL WHITECHAT, a Minor, etc., et al., Respondents, v. ERVINE O. GUYETTE, Appellant.

Chester O. Hansen, John Said, G. F. Delamer and Schell & Delamer for Appellant.

Gray, Cary, Ames & Driscoll, as Amici Curiae, on behalf of Appellant.

Rae B. Carter and John D. Chinello for Respondents.

THE COURT.—Defendant appeals from a judgment rendered by the trial court after a jury verdict awarding plaintiffs, as surviving widow and minor child, $8,000 damages for the alleged wrongful death of one David Whitechat. The death occurred when the automobile in which the deceased was riding overturned while being driven from Fresno to Stockton. The defendant owned and was driving the car at the time of the accident. The occupants of the car, other than defendant, were officers of the Fresno Chapter of the Young Men's Institute and, as such, were going to Stockton

to attend a business meeting of that organization. The defendant was a member of the Young Men's Institute but was not an officer required to attend the meeting. One of the occupants of the car was a grand officer of the organization and was allowed mileage, which would amount to approximately five dollars. This money was to be turned over to the defendant.

A few miles north of Fresno, while driving at a speed of fifty miles per hour, defendant lost control of the car as the result of the flattening of the left rear tire, and the accident and death above referred to followed. The complaint alleged that Whitechat was riding as a passenger for compensation and that his death was the direct and proximate result of defendant's negligence. There were no allegations, nor was there any proof offered, of intoxication or wilful misconduct on the part of defendant.

Appellant argues that the evidence most favorable to the respondent shows, as a matter of law, that Whitechat was technically a ''guest'' and was not a ''passenger for compensation,'' as alleged in the complaint, and that therefore the judgment cannot stand, as neither wilful misconduct nor intoxication was pleaded. Respondents argue that whether or not compensation was given was a question of fact for the jury, and that by returning a verdict in their favor, the jury impliedly found that there was compensation either because the relationship between the parties was of a business rather than a social nature and the transportation was supplied in pursuance thereof for their mutual benefit, or because of the special tangible benefit to the appellant for furnishing the ride, *viz.*, the promise of the five dollars to defray expenses. The determinative question, therefore, on this appeal is whether Whitechat was a passenger or a guest without having given compensation for the ride, within the meaning of section 403 of the Vehicle Code.

In approaching this problem it is well to keep in mind the observation made in the case of *McCann* v. *Hoffman*, 9 Cal. (2d) 279, 282 [70 Pac. (2d) 909], to the effect that although the terms ''passenger'' and ''guest'' have for convenience been adopted for the purpose of distinguishing a person carried for hire or reward from one carried gratuitously, the chief concern of the courts should be the meaning of the phrase ''without giving compensation'' as used in section

403 of the Vehicle Code, and not a definition of the term "guest."

Since the enactment of the "guest law" in 1929 there have been numerous decisions both by this court and the District Courts of Appeal wherein it was determined that certain benefits passing from the occupant to the owner or operator of an automobile were or were not sufficient to be termed "compensation" within the meaning of what is now section 403 of the Vehicle Code. These cases have laid down certain general rules which may be used as a guide, but as noted in *McCann* v. *Hoffman, supra,* the nature of compensation as contemplated by the statute is as variable as the particular facts involved. Instead of attempting to formulate some new or further rule in the instant case, the better method would seem to be to place this case within one of the classifications of the previously decided cases, if we are justified in so doing by its facts.

As a starting point reference might be made to a situation in which a person driving along a highway picks up a hitch-hiker. It is clear that the pleasure derived from the doing of such an act of kindness is not a benefit sufficient to be considered compensation, and, in fact, the only tangible benefit is enjoyed by the hitch-hiker. Nor is there any question of compensation involved if a driver of a car takes another to some social event which both desire to attend or to some other point of common destination solely for the pleasure derived from the taking. It is equally clear that the benefits of hospitality, companionship or goodfellowship accruing to the owner or operator of an automobile as the result of a simple pleasure trip are not benefits that may be considered compensation. Even if there is something tangible in the way of a contribution of money from the occupant to the driver, a sharing of expenses, or even in some cases full payment of gas and oil by the occupant, there is no benefit sufficient to be termed compensation if the trip is of a purely social nature. In the McCann case, *supra,* two couples were on a pleasure trip from San Mateo to Rio Del Mar, and there was a mutual understanding that the expenses of the trip would be shared equally. It was there held that such sharing of expenses was not compensation. (See, also, *Stephen* v. *Spaulding,* 32 Cal. App. (2d) 326 [89 Pac. (2d) 683]; *Starkweather* v. *Hession,* 23 Cal. App. (2d) 336 [73 Pac. (2d) 247]; *Rog-*

*ers* v. *Vreeland,* 16 Cal. App. (2d) 364 [60 Pac. (2d) 585]; *Chaplowe* v. *Powsner,* 119 Conn. 188 [175 Atl. 470, 95 A. L. R. 1177]; *Morgan* v. *Tourangeau,* 259 Mich. 598 [244 N. W. 173]; *Clendenning* v. *Simerman,* 220 Iowa 739 [263 N. W. 248].) On the other hand, if the parties are engaged in a business venture for their mutual advantage and the ride is an integral part of that business venture, then the driver may be said to be in receipt of benefits sufficient to be classified as compensation, and the occupant becomes a "passenger," who may recover for injuries suffered as a result of the negligence of the driver. In the case of *Walker* v. *Adamson,* 9 Cal. (2d) 287 [70 Pac. (2d) 914], the driver and occupant were business associates, and the trip was for the purpose of taking some material to carpenters engaged in construction work on property jointly owned by them, and for the purpose of supervising said construction and the renting of the property. Under such circumstances compensation was said to have been given. (See, also, *Jensen* v. *Hansen,* 12 Cal. App. (2d) 678 [55 Pac. (2d) 1201]; *Parrett* v. *Carothers,* 11 Cal. App. (2d) 222 [53 Pac. (2d) 1023]; *Woodman* v. *Hemet Union High School District,* 136 Cal. App. 544 [29 Pac. (2d) 257].) Another situation where the benefit received has always been held to be compensation is that in which the owner or operator invites another to ride with him with the hope of making some future profit as a result of such ride. One of the first and a typical example of this type of situation is the case of *Crawford* v. *Foster,* 110 Cal. App. 81 [293 Pac. 841], wherein a prospective purchaser of an automobile injured in an accident during a demonstration was held not to be a "guest" without having given compensation, because of the hope of a future sale on the part of the driver. (See, also, *Piercy* v. *Zeiss,* 8 Cal. App. (2d) 595 [47 Pac. (2d) 818]; *Riley* v. *Berkeley Motors, Inc.,* 1 Cal. App. (2d) 217 [36 Pac. (2d) 398].) The final and most obvious situation in which it may be said that compensation has been given is that wherein an owner or operator is promised a money payment for transportation to a certain point. The clearest example of this is a passenger in a taxicab. (*Chaput* v. *Lussier,* 132 Me. 48 [165 Atl. 573].) If the person injured is one of a class which the owner or operator was paid to transport, then it is immaterial whether or not that particular person made the payment. (*Smith* v. *Fall River*

*Joint Union High School District,* 118 Cal. App. 673 [5 Pac. (2d) 930].)

Having outlined the classifications made by the appellate courts of this and other states, there remains the question whether the facts in the instant case place it in one of the above-mentioned categories.

Respondents contend that the jury could have found the deceased to be a "passenger" or that the defendant received compensation, under the authorities, for two different reasons: First, because the relationship between the parties was that of business and the transportation was supplied in the pursuit thereof for their mutual benefit; and second, because of the promise of payment of the five dollars for furnishing the ride.

In order to uphold the respondents' first contention, it must be shown that the appellant and the deceased were engaged in a business venture for their mutual advantage and that the ride was an integral part of that business venture. No such showing has been made. It is true that all of the occupants of the car were members of the Young Men's Institute, and it might be said generally that the trip was being made for the purpose of attending a meeting of that organization, but, specifically, the four occupants of the car other than appellant were attending a business meeting which, as officers, they were required, or at least expected, to attend. The appellant, although a member, was not an officer and was not required to attend. Therefore, as between appellant and deceased, it cannot be said that the trip was an integral part of a business venture for their mutual advantage, as in the case of *Walker* v. *Adamson, supra,* where the trip was being made for the purpose of taking material to carpenters who were working on property jointly owned by the driver and the injured occupant. Disregarding for the moment the promised money payment, the relationship between the appellant and the deceased may be said to be merely one of a social nature analogous to that existing in the case of *McCann* v. *Hoffman, supra,* wherein the parties were on a pleasure trip. From this standpoint then the benefit received by appellant was not sufficient to be termed compensation, within the meaning of section 403 of the Vehicle Code.

Respondents' second contention is that whether the promise of payment of five dollars was compensation as in

the case of *Smith* v. *Fall River Joint Union High School District, supra,* or merely a sharing of expenses as in the McCann case, *supra,* was a question of fact for the jury, and that body, by rendering a verdict for respondents, impliedly found that the payment was compensation, which finding is conclusive on this court. In answer to this contention appellant argues that in view of the evidence presented, the question is one of law, and as a matter of law under *McCann* v. *Hoffman, supra,* deceased was a "guest" and not a "passenger," or in other words, that the promise of payment of five dollars was merely a promise to share expenses and not compensation.

The record discloses that the only evidence in regard to the conditions under which appellant agreed to take his car and drive to Stockton was given by the appellant himself. Prior to the trial and on June 29, 1939, his deposition was taken under section 2055 of the Code of Civil Procedure. His testimony on that occasion was, in part, as follows:

"Q. (By Mr. Carter): Now, you say, you were driving these boys up there to that meeting?

"A. That is right.

"Q. And the Y. M. I. was paying you for your gas and oil a certain amount of money *for driving up there?* (Emphasis added.)

"A. That is right.

"Q. Some $9.

"A. I think it was $5.

"Q. $5?

"A. Yes, sir."

Some four months later at the trial, upon being called as a witness in his own behalf, appellant testified that he agreed to take the officers to Stockton before the five dollar offer was made; that subsequent to that agreement, the grand officer told appellant that he would give him the five dollars, which he could collect from the Young Men's Institute as mileage, to defray appellant's expenses on the trip; and that he (appellant) accepted the offer but still insisted that he was going to take the men to Stockton because of his friendship for them and in the interest of the organization, and not because of the promised money payment. If this latter testimony were accepted as true, then it would follow that the promise of the $5 payment was merely a promise to share expenses, and not a promise of compensation. However, "The jury

is the sole judge of the credibility of the witnesses and may believe all of the testimony of a witness or believe a part and reject parts as it may be convinced of the truth or falsity of such testimony, whether it arises from wilfulness or mistake.'' (*Lindemann* v. *San Joaquin Cotton Oil Co.,* 5 Cal. (2d) 480, 503 [55 Pac. (2d) 870].) The jury could therefore have believed that portion of appellant's testimony given at the trial in which he stated that he agreed to make the trip before any mention of payment was made, and the further portion thereof wherein he stated that he was making the trip only out of friendship for the men and in the interest of the organization. On the other hand, the jury could have accepted as true only that portion of the deposition in which the appellant stated that he was being paid $5 by the Y. M. I. for his gas and oil ''for driving up there.'' Because of the verdict in favor of the respondents, it must be assumed that the jury accepted as true the statement made in the deposition, and that it rejected the statements made at the trial in regard to the promised $5 payment. At the time of giving his deposition, appellant made no claim that he was driving the deceased and the other occupants of his car to Stockton in the interest of the organization and on account of his friendship for them. Nor did he then state that he was not making the trip for the $5. From the statement in the deposition the jury reasonably could have concluded, and apparently did conclude, that the $5 payment was promised and the promise was accepted as compensation for making the trip to Stockton. In view of the evidence presented, it cannot be said, as a matter of law, that the promise of payment of the $5 was merely a promise to share expenses. The jury impliedly found that the payment was compensation and such finding, on a question of fact, is conclusive on this court.

Appellant further contends that the evidence is insufficient, as a matter of law, to support the implied finding of the jury that he was negligent in the operation of the automobile. This point was ably discussed by the District Court of Appeal, Fourth Appellate District, in an opinion written by Justice Griffin prior to the granting of a hearing by this court. In his petition for a hearing before this court, appellant did not question the disposition of this contention as made by the District Court of Appeal. Nothing further said by this court could improve the disposition there made. Therefore, that portion of the opinion of the District Court

of Appeal dealing with the negligence of appellant is hereby adopted as expressing the views of this court. Said portion of the opinion is as follows:

"Appellant insists that the record does not establish that he failed to exercise ordinary care, and endeavors to defend on the doctrine of unavoidable accident. We are again confronted with the rule, as admitted by appellant, that in passing upon the merits of an appeal an appellate court will and must accept as true all evidence tending to establish the correctness of the finding or verdict and must consider the evidence in the most favorable aspect towards the prevailing party and give that party the benefit of every inference that can reasonably be drawn in support of his claim. (*Cope* v. *Goble*, 39 Cal. App. (2d) 448, 453 [103 Pac. (2d) 598].)

"Appellant argues that 'the Gods of fortune do not smile on all persons equally. As a result, some people do not have the financial wherewithal to buy new automobiles, or in the event they buy used automobiles, to buy new tires and tubes "all around," ' and contends that appellant acted as a reasonable and prudent person would act under the same or similar circumstances after buying a second-hand car, and that his failure to dismount the rear tires on the automobile on the chance that he might find that the inner tubes were 'lifeless', was not negligence. It is further argued that the owner of an automobile does not owe an absolute duty to others that his automobile shall be in a safe condition, but he is only bound to use reasonable care to see that his vehicle is in proper condition to use on the highways, citing *Bolin* v. *Corliss Co.*, [1928] 262 Mass. 115 [159 N. E. 612]; *Coppedge* v. *Blackburn*, 15 Tenn. App. 587; and *Kemp* v. *Stephenson*, 139 Misc. 38 [247 N. Y. Supp. 650].

"Respondents claim that the record supports the finding that appellant was negligent in several respects: (1) That he violated section 679 of the Vehicle Code forbidding the operation of automobiles that are not in safe mechanical condition and which would endanger the driver or other occupant or any person upon the highway; (2) that he violated the speed laws of the state; and (3) that he failed to keep his automobile under control.

"As to the first claim, the rule set forth in 2 Cal. Jur. Ten-Year Supp., section 157, page 234, is quoted to the effect that 'The statute declares that it shall be unlawful for any person to drive a vehicle unless it is in "such safe mechanical

condition'' that its operation on the highway shall not endanger the driver or an occupant of the vehicle or any person upon the highway. ''It is the duty of one operating a motor vehicle to see that it is so equipped in order that it may at all times be under control and not become a menace to other traffic on the highway.'' Proof having been made that the collision was occasioned by the defective condition of the party's vehicle, the issue as to his responsibility for the happening of the calamity depends upon the showing as to whether he knew or ought to have known of the existence of the defect.'

''An instruction to this effect was given in *Brandes* v. *Rucker-Fuller Desk Co.*, 102 Cal. App. 221 [282 Pac. 1009], where an automobile left the highway and ran upon a sidewalk and injured a pedestrian due to the breaking of a portion of a steering gear, the evidence tending to show that the vehicle had been used to such an extent that its safety was a matter of doubt. (See, also, *Coppock* v. *Pacific Gas & Electric Co.*, 137 Cal. App. 80 [30 Pac. (2d) 549]; *Smith* v. *Brown*, 102 Cal. App. 477 [283 Pac. 132]; *Maus* v. *Scavenger Protective Assn.*, 2 Cal. App. (2d) 624 [39 Pac. (2d) 209]; *Rath* v. *Bankston*, 101 Cal. App. 274 [281 Pac. 1081]; *Silvey* v. *Harm*, 120 Cal. App. 561 [8 Pac. (2d) 570]; *Dunn* v. *Shamoon*, 37 Cal. App. (2d) 486 [99 Pac. (2d) 1113].)

''The question then presented is this: Do the facts in the instant case come within the rule which would impose negligence on the part of appellant? The force of the evidence on the mechanical condition of the car was that the left rear tire did not blow out but went flat because the inner tube was 'rotten' and in a dangerous condition. A portion of the tube bore evidence of five or six patches. It was incapable of retaining air. The jury saw that portion of the inner tube and saw a demonstration of its condition. That the inner tube was not in a safe condition is not open to doubt.

''From the evidence it appears that appellant was told by the salesman of the used car, at the time of the sale, that all of the tires and tubes were in good condition. Observation subsequently informed appellant, however, that the spare tire was in a bad condition, notwithstanding the salesman's statement. A few months after the sale, again notwithstanding the salesman's statement, and after a puncture appellant found that the left rear tire and tube were in such bad condition that they also had to be thrown away. This should have

placed appellant upon notice of the fact, at least, that the salesman's representation as to those particular tires and tubes was somewhat erroneous and of the added fact that if those tires and tubes were in such bad condition the same might be true of the others.

"The added and admitted fact that appellant was operating his automobile, of somewhat ancient vintage, with tires and tubes of the kind described, on a warm day, at 50 miles per hour, may have been *prima facie* unlawful, and the jury had the right to determine that the operation of the vehicle under the surrounding circumstances, at the excessive speed, constituted negligence. (Secs. 511 and 513, Vehicle Code.)

"The record further discloses testimony given by a witness for the respondents who had been in the automobile tire and garage business for 32 years, and who more or less qualified as an expert on the subject. His evidence substantiates respondents' claim that appellant did not use the proper care in bringing the car to a stop after he sensed the fact that the tube was leaking or that he was having tire trouble. It reads in part as follows:

" 'Q. (By Mr. Hansen): But I am asking you based upon what you saw, that the marks got wider as they went along, that it appears to you as a tire expert which you say you are, that the air did not leave that tire in just one explosion but went out gradually? A. Gradually, yes, sir . . . Q. He (Guyette) said in his deposition that he couldn't control it, he was permitting it to stop without applying the brakes? A. Yes, sir. Q. As a tire man you would say that was the proper way to stop a car when you have a flat tire? A. No, sir. Q. What do you do, put on your brakes? A. No, sir. Q. What do you do? A. The minute you feel that tire flat, if you are going very fast, the best thing to do is slow it down a little and then when you come to your crawling speed you will have to release it, and when you get below that again you put your brakes on again . . . Q. But you wouldn't say that he did the wrong thing by not using his brakes hard when he felt the tire go down on him? A. Yes, sir, I do. I think that could have been avoided if he had been a little careful in putting them on quickly and using them at the proper time.'

"In *Brandes* v. *Rucker-Fuller Desk Co., supra,* it is held that if the question of whether or not the automobile was being operated in a careless manner was one from which reasonable minds might draw different conclusions, the deter-

mination of the jury that it was being carelessly operated was controlling on appeal.''

For the foregoing reasons the judgment is affirmed.

Appellant's petition for a rehearing was denied March 6, 1942.