[Civ. No. 13959. Second Dist., Div. Three. Oct. 25, 1943.]

MYRTLE E. SEARS, Appellant, v. CHARLES SCHWARTZ, Respondent.

Chas. L. Nichols for Appellant.

Sherman & Sherman and Glenn M. Still for Respondent.

BISHOP, J. pro tem.— A principle of law bars appellant from success on this appeal. It is expressed in *Hoppe* v. *Robb*, (1851) 1 Cal. 373, 374, in these words: "We have frequently held that we would not review the verdict of a jury upon a question of fact, where there was conflicting or contradictory evidence, upon which the verdict was based. The same rule applies to the finding of a judge, to whom a question of fact is submitted, and upon which he has passed." Ninety years later we find the principle still in vogue. "A finding of the trial court upon conflicting evidence will not be disturbed on appeal if there is evidence of a substantial character which reasonably supports the judgment." (*Fewel & Dawes, Inc.*, v. *Pratt*, (1941) 17 Cal.2d 85, 89 [109 P.2d 650].)

This action was brought by the plaintiff, a Los Angeles school teacher, to rescind a property settlement entered into in December, 1934, two months before the plaintiff obtained a default decree of divorce from the defendant. By the settlement, the plaintiff surrendered her interest in the community property which consisted of a merchandising venture in the city of Glendale, entered into by the defendant in 1931, in return for which she was to, and did, receive a promissory note executed by the defendant, by which he bound himself to pay, in installments, the sum of $4,600, that being the sum which plaintiff claimed, and the defendant did not dispute, she had loaned him in the early days of his business. In addition, according to plaintiff's contention, the defendant agreed to keep in good standing during his lifetime a ten thousand dollar life insurance policy in which he was the assured and the plaintiff was named as beneficiary, and in which she was to continue to be named as the sole

beneficiary. There is no dispute about the facts that the defendant paid off the note; that he kept the life insurance policy in good standing, with the plaintiff named as sole beneficiary, until May, 1940, but that then a new beneficiary was substituted for the plaintiff.

Plaintiff, in her complaint, took two positions: first, that the change of beneficiary was a breach of defendant's promise to keep her as the sole beneficiary of the policy, a breach which constituted a failure of the most substantial part of the consideration she was to receive for entering into the settlement; and second, that if there was no such promise, then the agreement as to her was so unfair and inequitable that it constituted a constructive fraud upon her. With respect to the latter position plaintiff now argues that her community interest in the business was quite valuable, as her husband knew, but she did not; that she did not have the benefit of the advice of counsel; that as the note did not constitute legal consideration, because it was only a promise to pay that to which she was already entitled, it followed that that which she surrendered, by the agreement, greatly exceeded in value anything which she received.

Around the point of pivotal interest, the question of the terms of defendant's promise respecting the insurance policy, a sharp conflict appears in the evidence. We find the plaintiff's first statement on the subject to be in this equivocal language: "I told Charles that I . . . wanted only one more thing, that I wanted him to keep his insurance policy in my favor for life, and he agreed to do that under certain circumstances, as far as the loan was concerned, he agreed to keep the policy in my name, and I give up all claim to the store under that agreement." Later on in her testimony she was more positive that the defendant had agreed to carry the policy permanently, although he did at first express a desire not to be bound beyond the term of the loan.

The defendant's testimony was quite positive that he never said that he would keep her as the beneficiary beyond the life of the loan. Indeed he stated that during the first two conversations, upon which the plaintiff relied, no mention was made of the insurance policy, but that about two weeks later the plaintiff told him that she wanted him to assign the policy to her so that he could not change the policy, because she wanted her note protected, to which he replied: "Well,

that's an idea. I think that's a good idea. But I won't assign anything to you or to anyone else, but I will agree to keep this policy in force until I have finished paying you this $4600.'' The plaintiff expressed her satisfaction at this arrangement by saying: ''That's perfectly all right, and that's all I wanted in the policy.'' Discharging the task which was peculiarly his, that of determining from conflicting evidence what the facts were, the trial court found that the defendant agreed to maintain plaintiff as sole beneficiary of the policy ''so long as and until'' the said note had been paid in full, but that he did not agree that he would not at any time thereafter change beneficiaries. In arriving at these conclusions the trial court was privileged to believe that the policy was discussed during the first two conversations, as the plaintiff testified, and at the same time to accept the defendant's version of what was said, and so of the agreement that was reached; for a trier of fact may accept part and reject part of the testimony of a witness. (*Whitechat* v. *Guyette*, (1942) 19 Cal.2d 428, 435 [122 P.2d 47].) It is a fact, therefore, settled for all purposes on this appeal, that the defendant did not agree to keep the plaintiff as his sole beneficiary beyond the term of the note.

This fact cuts the ground from under plaintiff's first position. The second has no better foundation. The evidence shows without conflict that the matter of a settlement was first broached by the appellant. According to her own story she made the offer to give up such interest as she had in her husband's business if he would give her the note for $4,600 and keep the insurance policy alive for her benefit. His testimony was positive that the conversations which resulted in the property settlement were opened by her with the presentation of a note for $4,600 which she had had an attorney in San Diego County prepare. Plaintiff did not object to the principal that the note called for, but objected to its six per cent interest and to some other of its terms. An understanding was reached, following which she went to the San Diego attorney to have a new note written. He prepared one, and mailed it to her. She presented it to the defendant at their second conversation respecting the settlement and the defendant signed it.

In order to obtain her divorce the plaintiff engaged a Los Angeles lawyer. In her complaint she alleged that there was no community property. She mentioned to her San Diego

attorney and to the attorney who drew her divorce complaint that there had been a property settlement, but, according to her statement, neither asked for nor received from either of them any legal advice about it, nor did she discuss its details with them.

 Respecting plaintiff's community interest in defendant's business, which she voluntarily exchanged for the note and insurance protection, the trial court was entitled to conclude, as it did, that it was not of great monetary value and that its value was not unknown to the plaintiff. We refrain from noting all the evidence on the subject. Referring, doubtless, to the days before December, 1934, these answers of the plaintiff to the questions which elicited them are pertinent: "Q. You were always discussing money matters with Mr. Schwartz? A. Well, because he was always getting money. I had to. Q. And you were rather cognizant all the way along as to what he was putting into the business and how the business was progressing? A. I was interested in it, yes." According to the defendant, he operated at a loss each year until 1933, when there was a profit of $129.31, followed the next year by a profit of $922.05. The net value of the business, in December, 1934, counting the $4,600 note as a liability, was minus $2,850, the defendant testified. In 1937, in order to let the defendant have a badly needed vacation, she took a power of attorney, and ran his business "for awhile."

 The facts we have related plainly do not justify plaintiff's attempt, made not earlier than 1941, to rescind her agreement and to reassert that she has a community interest in defendant's store. The bargain made was largely her own proposal. The promise, faithfully kept, to secure her loan by keeping operative the insurance policy in which she was the beneficiary, was not only valid consideration, as an abstract matter of law, but, as the trial court could see, it was fair consideration, all that plaintiff sought. To argue that the agreement may be avoided because she did not have the advice of counsel has two possible answers. First, the trial court may well have disbelieved plaintiff's story that she told her two lawyers of the property settlement, but did not discuss its terms with them. Second, if her story is true, it was her fault, not that of her husband, that she was not fully advised by her counsel. There is no rule of law that requires

one, in a confidential relation, not only to take the trusting one to a legal fountain but also to make her drink. Lastly, if plaintiff had been overreached, as it does not appear that she was, in that she had given up a more valuable interest in the store than she suspected, she must have discovered that she had made a bad bargain when she ran the store in 1937. The excuse offered for her failure to rescind until some four (or five) years later is this: "So long as she was beneficiary of the policy, she had no right of action." To the last, appellant, although having given lip service to the power of the court to find the facts contrary to her testimony, in view of the contradictory testimony of the defendant, nevertheless disparagingly characterizes that testimony as his *ipse dixit*, and argues her case on the theory that her *ipsa dixit* prevails. It did not and does not.

The judgment is affirmed.

Desmond, P. J., and Wood (Parker), J., concurred.