ANNA CHAPUT *vs.* ADELARD J. LUSSIER.

MARIE CHAPUT *vs.* ADELARD J. LUSSIER.

JOSEPH CHAPUT *vs.* ADELARD J. LUSSIER.

(*Two Cases*)

Androscoggin.      Opinion April 1, 1933.

*Clifford & Clifford,*
*Frank T. Powers,*
*John Marshall,* for plaintiffs.
*Benjamin L. Berman,*
*David V. Berman,* for defendant.

Sitting: Pattangall, C. J., Dunn, Sturgis, Barnes, Thaxter, JJ.

Dunn, J. These four actions by three different plaintiffs against one defendant are in this court on defendant's exceptions to the acceptance of referees' reports, adverse to him. Two of the cases, those by Anna Chaput and Marie Chaput, were once before presented on their exceptions. An issue in the references, concerning which evidence had been introduced, having been left undecided, the exceptions were sustained. *Chaput* v. *Lussier,* 131 Me., 145, 159 A., 851. This opened the questions in each case anew. The lower court recommitted the cases to the same referees. This time the referees heard and considered not only these, but two other actions against the same defendant. These are by Joseph Chaput, the husband of Anna Chaput, and the father of Marie Chaput, a minor. Findings were favorable to the several

plaintiffs. No award of damages is the subject of attack, except as a whole; the contention of the defendant is the want of legal basis for any award.

The women plaintiffs, while being carried in a taxicab of the defendant, suffered personal injuries. They sue for damages; the younger woman, whose age when injured was nineteen years, prosecutes by her father as next friend. The suits by him individually, for compensation for loss of services, society and companionship, and for expenses, involve the same underlying issues as do the cases by the women.

There was evidence from which the referees could find that the defendant held himself as a common carrier of passengers, by taxicab service, for hire or reward. He owned taxicabs, which he was licensed to operate, for the general accommodation of the public, in transporting persons between termini designated by the caller of the taxicab, for fares agreed upon or usually charged. He did business as the American Diamond Taxi Company; he had a stand, and an office with telephone connection, and taxicabs and drivers who responded to calls to take people where they wanted to go. There was ample evidence to warrant the inference that the defendant was a common carrier. This being true, he assumed all the obligations incident to that calling. See Hutchinson on Carriers (3rd ed.) Secs. 48, 49.

A common carrier in the modern sense includes a carrier of passengers as well as one of goods. Hutchinson on Carriers, Sec. 890. Carriers of passengers are not held responsible as insurers of the safety of those whom they transport, as common carriers of goods are. They are, however, bound to exercise care and diligence for the comfort and safety of their passengers.

The obligation of a carrier to a passenger for his safe carriage is usually dealt with as an obligation imposed by the law of torts rather than as one assumed by contract. Liability, though it arises out of contract, is for negligence. The obligation is wider than any that could be based on mutual assent. Williston on Contracts, Sec. 1113.

Defendant's taxicab came to plaintiffs' house, in answer to a telephone call, late in the afternoon of November 23, 1930, to carry the husband and father to a town some miles distant, and to

take the women and one Lucien Lussier (a friend of the girl, and brother to the defendant) there and back. The fare, which was fixed in advance at six dollars, appears to have been payable upon full performance of the contract of transportation. The referees were justified in believing, from the evidence, that the women entered the taxicab in the character and relation of passengers.

Leo Gagne, an employee of the defendant, was the regular driver of the taxicab. He reported with it. The defendant himself testified that he had given Gagne orders not to allow anyone else to drive the cab. That there had been such an order is not shown to have been known to the plaintiffs. However, instructions of the master to his servant do not govern the situation.

On learning where the vehicle was to be driven, Gagne asked Lucien Lussier if he had been over the route. Lucien said that he knew the road well, whereupon Gagne asked him to drive; he took the wheel. He had a chauffeur's license, and was experienced in the driving of automobiles. Gagne and Miss Chaput sat on the seat with Lucien on the outward journey, Mr. and Mrs. Chaput occupying the back seat. After leaving Mr. Chaput at his destination, Leo took his place in the rear seat, Miss Chaput remaining in front. On the return trip, with Lucien still operating the cab, the accident occurred.

The respective declarations allege negligence in the operation of the taxicab, by Lucien, in the middle of the road, at an excessive rate of speed, in a careless and reckless manner, and swerving it to the right, suddenly and without warning, so that it skidded and crashed into an approaching car, and bumped and slid along the highway, with a broken wheel, for a long distance, finally tipping over, with proximate disaster. Operation is alleged to have been by request of, and in the presence of Gagne, and in consequence of his careless and reckless neglect.

On rounding a curve in the road (the time now being about nine o'clock), two or three automobiles were seen approaching. There was evidence of tendency to prove that the lights on these cars were first visible at the estimated distance of about one thousand feet, save for a moment when "they were in a hollow." Or, as another witness puts it, in effect, a dip in the grade the cars were making obscured view, but only for an instant. The second of these

cars was trying to pass the first. It either had accomplished, or was about to accomplish this, on the summit of the not steep elevation, when it came into collision with the taxicab, the injuries to Mrs. Chaput and Miss Chaput directly resulting.

A finding was warranted, from conflicting evidence, that the cab was being driven at an unduly high rate of speed, in the center of the road. Miss Chaput testified that her mother (who was so seriously injured as to be unable to attend on the trial), twice spoke to Lucien, shortly before the accident happened, saying that he was going too fast, and asking that he slacken speed. He did slow the cab, but only temporarily. Gagne made no attempt to control the operation of the vehicle; he did nothing; he said nothing.

The doctrine of respondeat superior has no application to the relation existing between a common carrier and passengers. *Pittsburg, etc., Railway Company* v. *Hinds*, 53 Pa., 512, 91 Am. Dec., 224. There was no such privity between the defendant and Lucien Lussier as to base liability on the principle that the master shall respond for the acts of the agent or servant. *Copp* v. *Paradis*, 130 Me., 464, 157 A., 228. The only ground of liability is a negligent violation of the contract for the carriage of the women in the taxicab. Defendant undertook to carry them, not as an insurer, but in the exercise of the highest degree of care compatible with the practical operation of the machine in which the conveyance was undertaken. *Libby* v. *Maine Central Railroad Company*, 85 Me., 34, 26 A., 943; *Maxfield* v. *Maine Central Railroad Company*, 100 Me., 79, 60 A., 710; *Pomroy* v. *Bangor & Aroostook Railroad Company*, 102 Me., 497, 67 A., 561. The negligence of the defendant, or what, in a legal sense, constitutes the same thing — that of his servant in charge of the taxicab — is the gist of action; and so it is laid in the respective declarations. The referees could have properly concluded that the servant, and therefore the defendant, was negligent.

The defendant is answerable in damages unless (a) contributory negligence, or (b) the rule applicable to a joint or common enterprise, precludes recovery.

In an action counting on negligence, the plaintiff must show a case clear of contributory negligence.

No person is ever absolved from exercising reasonable care for

his own safety simply because he is a passenger for hire. *Ouellette* v. *Grand Trunk Railway Company*, 106 Me., 153, 76 A., 280. A passenger in a stagecoach is held to the exercise of ordinary care to avoid injury, and if he fails to use such care, and thereby directly contributes to his injury, he cannot recover although there was negligence on the part of the carrier. *Keith* v. *Pinkham*, 43 Me., 501. A taxicab is held to constitute a hackney coach. *Dion* v. *Drapeau*, 254 Mass., 186, 150 N. E., 14. The rule that a passenger shall exercise due care for his own safety applies as between a passenger and a common carrier by automobile. *Garrow* v. *Seattle Taxicab Company*, 135 Wash., 630, 238 P., 623, 45 A. L. R., 293.

The plaintiffs were not the guests of the owner of the taxicab. The rule as to a guest who rides without exercising any care for his own safety finds no application here. Were that rule applicable, proof that the guest used proper care for his own safety would meet it. To the persons physically injured, the defendant owed the implied duty, arising out of his contract and imposed by law, of exercising the strictest care consistent with the reasonable performance of that contract. *Knight* v. *Portland, etc., Railroad Company*, 56 Me., 234. If Gagne exceeded his authority as an employee in selecting a substitute driver, and thus did wrong toward his employer, that would not relieve the latter from liability to the plaintiffs. The fact that Lucien was placed at the wheel did not change the relation between the defendant and the Chaputs. The defendant could not stand by to receive the benefits of the operation of his taxicab as a public conveyance, and in case of negligent injury to passengers, avoid responsibility on showing that the employee who had been sent with the cab disobeyed orders.

In performing the transportation contract, Gagne was the servant of the defendant. Whether he drove, or not, he was in the taxicab, with authority of supervision and control. In driving the cab, and carrying the Chaputs, neither Gagne nor Lucien Lussier was the servant of the passengers. The manner of operating the cab was not for the passengers to direct. The control of a taxicab passenger over the driver is restricted to giving directions as to destination. *Rea* v. *Checker Taxi Company*, 272 Mass., 510, 172 N. E., 612. See, too, *Wood* v. *Maine Central Railroad Company*,

101 Me., 469, 64 A., 833. The women were comparatively passive parties. *State* v. *Boston & Maine Railroad Company*, 80 Me., 430, 15 A., 36.

Contributory negligence is always a question for the arbiters of fact, when there is any doubt as to the facts, or the inferences to be drawn from them.

There was testimony that Mrs. Chaput protested the rate of speed, twice, and asked that the car be slowed. Whether, as a passenger for hire, it was incumbent upon her, in care for her own safety, to do this, is not the point; there is testimony that she did remonstrate. Additional protests by her or her daughter, would not, for anything on this record, have resulted in more than did the two protests. Indeed, constant suggestions as to the detail of the management of a motor vehicle often do more harm than good. *Keller* v. *Banks*, 130 Me., 397, 156 A., 817.

There was evidence that, at the time of the collision, the taxicab was on the wrong side of the road. If the law of the road was violated without fault of these suing passengers, their presence in the taxicab at the time of the violation would not prevent their maintaining actions against the defendant. His negligence is here measurable by his duty as a common carrier, not by his duty to other users of the highway. *Singer* v. *Martin* (Wash., 1917), 164 P., 1105. As between the passengers and the carrier, the road regulation was for the protection of the passengers. *Rea* v. *Checker Taxi Company*, supra.

It was for the referees to say whether, on the whole, the passenger plaintiffs were using such attention and vigilance as would the ordinarily prudent person under all the circumstances. Their decision was rested upon evidence. *Hovey* v. *Bell*, 112 Me., 192, 91 A., 844.

Nor was there a common enterprise. The women were mere passengers. They might not tell Lucien Lussier what he should do. His operation of the taxicab was by request of the defendant's servant, who was not subject to direction by the persons who were injured.

*Exceptions overruled.*