Lillie May **ROBERTS**

v.

**YELLOW CAB CO. and Forindoe
E. Fantasia.**

Supreme Judicial Court of Maine.

April 18, 1968.

Kenneth R. Murphy, South Portland, for plaintiff.

Lawrence P. Mahoney, Portland, for defendants.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, DUFRESNE and WEATHERBEE, JJ.

MARDEN, Justice.

On appeal from the direction of a defendant's verdict at the close of plaintiff's case, which was premised, except in minor degree, upon plaintiff's testimony.

A finding of the following facts is justified. Plaintiff, a woman 72 years of age, but gainfully employed, on the early morning of February 10, 1966 telephoned the office of the defendant company, which she had called "ever since 1942," for trans-

portation at 6:00 a. m. A taxi cab driven by defendant Fantasia, who had responded to plaintiff's call on several previous occasions, arrived a few minutes after the appointed time. Plaintiff left her home using a "walkway" from her front door to the curb of the street, which walkway had been shoveled free of snow and sanded. The weather was clear, but the sidewalk in front of plaintiff's home was icy and the surface of the highway was "part * * * dry and part * * * snow covered," according to a police officer who was called to the scene, and "plenty" of snow and ice on the ground according to plaintiff. The hours of darkness prevailed at the time and place in question.

When plaintiff reached the curb line of the street, the taxi cab had stopped in the middle of the street "above" an opening through the snow bank leading from the sidewalk to the street. As plaintiff passed through this opening the back window of the taxi cab was before her, as a result of which the plaintiff had to move laterally from the opening to reach the right hand door of the taxi cab, which the defendant driver had opened. As the plaintiff approached the defendant's vehicle, the driver did not dismount to assist her. As plaintiff "reached up taking hold of the top of the cab door" both feet went out from under her on ice unseen by her and she was injured. She complains in negligence against the company and the defendant driver.

To the defendant's motion for a directed verdict, grounded upon insufficiency both of proof of negligence on the part of the defendant and her own freedom from due care, a verdict for the defendant was directed.

█ The jury would have been justified in finding that the defendant company was operating public motor transportation for hire in a manner which was categorized in Chaput v. Lussier, 132 Me. 48, 165 A. 573 as "common carriage" and, as such, its duty to a passenger, based upon

its contract for carriage, required "the exercise of the highest degree of care compatible with the practical operation of the machine in which the conveyance was undertaken." Chaput, supra, at page 52, 165 A. at page 575. This decision follows the weight of authority. 14 Am.Jur.2d Carriers § 1005; 37 Am.Jur., Motor Transportation § 154; and Annot. 7 A.L.R.2d 549, § 6 at page 562. The responsibility for the exercise of such duty rests as well, upon the operators of the taxi cabs.

█ If the jury found that defendant company were a public carrier for hire, with its concomitant duty pronounced in Chaput, the issues then become a) whether the passenger-carrier relationship had been created between plaintiff and defendants and, if so, b) whether defendants fulfilled that duty. The filfillment of defendants' duty to plaintiff involved the defendant-driver's conduct at the place he proposed to pick up his passenger, which included existing street and traffic conditions, which he actually or constructively knew, the place of stopping and whether he had reason to believe the passenger needed assistance in entering the cab. Coexisting was plaintiff's duty to herself, affected by the then recent statute on comparative negligence, 14 M.R.S.A. § 156.

In plaintiff's complaint she alleged that the defendant company had served her "for three years," that it knew that she was an elderly woman, that the taxi driver violated his duty in stopping where he did and opening the right door of his vehicle thus indicating where plaintiff was to enter, without ascertaining the safety of her route of approach and entry to the cab, and failing to dismount to assist her.

█ The determination of the plaintiff's status with the defendants determines the degree of care owed to her by the defendants. If the carrier-passenger relationship had not been established "the carrier owes only the same duty to such person as it does to the public generally; namely, the duty of

exercising reasonable care and diligence in the operation of its conveyances." 14 Am.Jur.2d Carriers § 1005.

■■■■ It is realized that unlike most rail transportation facilities which have designated places for taking on and discharging passengers, and which designated places are many times owned or under control of the carrier, the taxi cab has no definite route of travel, usually no designated stopping places and the point where and when the relationship of carrier and passenger arises depends upon the circumstances. One rule, which recommends itself, was established in Sanchez v. Pacific Auto Stages et al., 116 Cal.App. 392, 2 P.2d 845 (1931 in which hearing was denied by the Supreme Court of California) where the court said at [8–12] page 847:

"The relationship of carrier and passenger arises when the passenger enters with intent to pay or pays for entrance into the vehicle or carriage. * * *. It is not necessary, in order to create the relation of carrier and passenger, that the passenger should have actually entered the vehicle. The relation is in force when one, intending in good faith to become a passenger, goes to the place designated as the site of departure at the appropriate time and the carrier takes some action indicating acceptance of the passenger as a traveler."

Our case of Murray v. Cumberland County Power and Light Company, 117 Me. 165, 103 A. 66 is cited to us in support of defendant's contention that, in facts not dissimilar to those at hand, the court held that the carrier-passenger relationship had not arisen. In *Murray* because of snowbanks on either side of a street car track the plaintiff "for her own convenience" was passing around the front end of the car, in so doing placed her hand and arm against the front door of the car, which door was an exit and not an entrance, and in the opening of the door to permit passengers to dismount plaintiff's arm was

injured. The court said at page 167, 103 A. at page 67:

"It is therefore difficult to conceive of any occasion upon which a prospective passenger, or other person, should approach the front door of this car from the outside. But only for the approach to this door of such persons as might be expected to come to it for some legitimate purpose, can the defendant be held responsible."

This comment does not exclude the creation of the relationship before actual entry of the traveler into the conveyance.

■■■■ It is essential to the creation of the passenger-carrier relationship that a contract of carriage, express or implied, be formed, and "is commonly to be implied from the attendant circumstances" 14 Am.Jur.2d, Carriers § 739. This means "an undertaking on the part of the person to travel in the conveyance provided by the carrier, and an acceptance by the carrier of the person as a passenger." Id. § 740.

■■■■ Cases hold that the mere signal to a conveyance to stop at a regular stopping place does not create the relationship, Vaughn v. Healy, 120 Conn. 589, 182 A. 166 (1944) but where some response is made to the signal by the carrier, the passenger-carrier status may arise. Karr v. Milwaukee Light, Heat & Traction Co., 132 Wis. 662, 113 N.W. 62, 13 L.R.A.,N.S., 283 (1907). It was held that the relationship had arisen in Fowler v. Randle, 284 Ky. 164, 143 S.W.2d 1049 (1940) and other cases therein cited. Here plaintiff requested the transportation by telephone and seasonably the cab arrived at the time and place assigned. But for considerations discussed later, it was for the jury to determine under appropriate instructions whether a contract for carriage had been made,—whether plaintiff had undertaken to travel by this cab and the defendant had accepted her as a passenger.

Should the existence of a contract for carriage have been found, the standard of

care fixed by *Chaput,* supra, applied and the place where the taxi cab stopped for plaintiff to enter, and the conduct of the driver at that point, would be measured by the *Chaput* imposed duty.

In cases where the carrier-passenger duty has been expressed as in *Chaput,* it has been held that this duty required the carrier-defendant to stop at a reasonably safe place for the passenger to enter. Fowler, supra, [1] at page 1050 (taxi cab); Publix Cab Company v. Fessler, 138 Colo. 547, 335 P.2d 865, [1–6] 867, 75 A.L.R.2d 979 (1959, taxi cab); Herron v. Rose City Transit Company, 243 Or. 64, 411 P.2d 445, 446 (1966, motor bus);[1] Annot, re motor buses, 56 A.L.R.2d 237, § 8(b) 252; Vasele v. Grant Street Electric Ry. Co., 16 Wash. 602, 48 P. 249, 250 (1897, trolley car); and Annot. 7 A.L.R.2d 549, § 19 at page 589 as to public carriage generally. Schickel v. Yellow Cab Co. of Philadelphia, 369 Pa. 356, 85 A.2d 138 (1952, taxi cab) recognizes this rule, with contra result on the facts of the case.

Whether the opening of a certain door of the cab by the operator was an implied invitation or direction to the plaintiff to enter the vehicle at that place and by that opening, and whether such conduct was negligent would turn upon actual or constructive knowledge on the part of the defendant of the street conditions there existing, of which, proof is lacking. "Ordinarily, and in the absence of any special circumstance, there is no duty resting on a common carrier to assist a passenger in boarding * * * its conveyance." 14 Am. Jur.2d Carriers § 1008. Knowledge on the part of the defendant of special circumstances such as health, age or infirmity on the part of its passenger is relevant to the

carrier's duty in such case and the rendering of reasonably necessary assistance, Id. § 1011, and Sullivan v. Yellow Cab Company, 212 A.2d 616, [4–8] 618 (D.C.Court of Appeals 1965). No such knowledge is traced to the defendant driver. The reason, if any, for previous assistance to the plaintiff is not disclosed.

Assuming that the jury would have been justified in · finding that the passenger-carrier relationship had been created and the *Chaput* imposed duty thereupon came into play, plaintiff is nevertheless burdened with proof of negligence. The carrier is not an insurer of plaintiff's safety, Chaput at page 50 of 132 Me., 165 A. 573, and as stated in Schickel, supra, [2, 3] at page 139 of 85 A.2d:

"The only duty of cab drivers as to stopping on these streets is not to stop at a place where it is obviously unsafe or where a reasonably prudent person would believe that it contained manifest characteristics of potential harm under the circumstances. * * * There were no such characteristics of potential harm in the case before us. There is no testimony that the driver even knew that there was water in the gutter, and the driver had no reason to believe that he had stopped his cab in a place of danger to plaintiff."

By substituting the word "ice" for the word "water" in line eight of the quotation, the declaration could have been written for the present case. The record does not warrant the submission of defendant's alleged negligence to a jury.

Appeal denied.

DUFRESNE, J., set at argument, but did not participate in the decision.

---

1. Judgment on verdict for defendant on retrial affirmed 431 P.2d 831 (1967).