STATE OF MAINE                                SUPERIOR COURT
CUMBERLAND, ss.                               CIVIL ACTION
                                              DOCKET NO. CV-19-499

JUNE RICKETT                            )
                                        )
            Plaintiff                   )
                                        )
      v.                                )   ORDER ON DEFENDANT'S MOTION
                                        )   FOR SUMMARY JUDGMENT
VIP TOUR AND CHARTER BUS COMPANY        )
                                        )
            Defendant and Third Party   )
            Plaintiff                   )
                                        )
      v.                                )
                                        )
JEANNE LEWAND                           )
                                        )
            Third Party Defendant       )
                                        )
                                        )

REC'D CUMB CLERKS OFC
NOV 19 '22 AM 1:34

Before the Court is Defendant VIP Tour and Charter Bus Company's ("VIP") Motion for

Summary Judgment. For the reasons set forth herein, the Motion is DENIED.

## FACTUAL BACKGROUND

This case arises out of a slip and fall which occurred on October 10th, 2017, at Federal

Jack's restaurant in Kennebunk, Maine. Plaintiff Jane Rickett ("Rickett") is a resident of Santa

Monica California, who on October 10th, 2017, was on a trip to Maine with approximately thirty

other women. (Defendant's Statement of Material Facts ("Def. S.M.F.") ¶¶ 1, 9.) Defendant VIP

1

is a Maine corporation which was contracted to provide transportation services for Rickett and the group of women she was traveling with.[1] (Def.'s S.M.F. ¶¶ 2, 33.)

On October 10th, 2017, Rickett and her group arrived at Boston's Logan International Airport. (Def.'s S.M.F. ¶ 9.) Once they exited the airport terminal, they boarded the VIP Bus which had been reserved by Third Party Defendant Jeanne Lewand.[2] (Def.'s S.M.F. ¶¶ 9, 10.)

The bus began traveling north towards Maine, eventually arriving at Federal Jack's restaurant in Kennebunk. (Def.'s S.M.F. ¶ 11.) Federal Jack's was the first stop of the seven day trip the group had planned — a detailed itinerary of which was provided to the VIP bus driver ahead of time. (Def.'s S.M.F. ¶ 11.) While VIP bus drivers are beholden to the destinations chosen by customers, the driver has discretion to determine the best way for them to reach their destination. (Def.'s S.M.F. ¶¶ 104-105.) Upon arrival at Federal Jack's, the bus driver chose to disembark Rickett and the other passengers in a lot northeast of, and adjacent to the restaurant. (commonly referred to by the parties as the "Pilot House Lot"). (Def.'s S.M.F. ¶ 12.)

Rickett and the other passengers disembarked the bus into the Pilot House Lot with little difficulty. (Def.'s S.M.F. ¶ 25.) To reach the restaurant, they made their way to a gravel path which connected the Pilot House Lot to Federal Jack's. (Def.'s S.M.F. ¶ 25.) At the end of the gravel path was a set of two steps which were uneven in height. (Def.'s S.M.F. ¶¶ 28, 117.) Rickett fell while ascending the steps, causing her injury. (Def.'s S.M.F. ¶ 28.)

The path which Rickett took was one of several access points to Federal Jack's from the Pilot House Lot. (Def.'s S.M.F. ¶¶ 67, 70, 81, 131.) It was the only defined walkway between the

---

[1] When Rickett initially filed this lawsuit, she named three other defendants, all Maine based companies: Shipyard, Inc., Federal Jack's Brew Pub Inc., and Seadog Properties LLC. All three companies reached a settlement agreement with Rickett and were dismissed from this case via a consented to order issued on September 23rd, 2021. The order dismissed fewer than all parties pursuant to M.R. Civ. P. 41.

[2] Lewand is a third party Defendant in this case because VIP sought — and was granted — her joinder as a Defendant on the issue of contribution.

2

two locations. (Def.'s S.M.F. ¶ 120.) All the other access points required walkers to step over a rope. (Def.'s S.M.F. ¶¶ 43. 70.)

The Pilot House Lot is commonly used for tour bus parking. (Def.'s S.M.F. ¶¶ 34, 37, 41.) The lot is designated as a tour bus parking spot by the Kennebunk-Kennebunkport-Arundel Chamber of Commerce, and six other tour buses had parked in the Pilot House Lot that day. (Def.'s S.M.F. ¶¶ 59, 133.) Additionally, M.R. Civ. P. 30(b)(6) representatives from each named defendant recognized that the Pilot House Lot is commonly used to park tour buses. (Def.'s S.M.F. ¶¶ 52, 60, 65, 67, 71 83, 84, 87, 89, 128.)

On December 20th, 2019, just over two years after Rickett's fall, she filed the instant five count complaint in Cumberland County Superior Court. Counts I and II assert negligence against VIP. On November 1st, 2021, VIP filed the instant Summary Judgment Motion, and on December 9th, 2021, Rickett filed her opposition. On January 24th, 2022, VIP filed their reply. VIP's Summary Judgment Motion, now fully briefed, awaits this Court's decision.

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when a review of the parties' statements of material fact and the record evidence to which they refer, considered in the light most favorable to the nonmoving party, establish that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Ogden v. Labonville*, 2020 ME 133, ¶ 10, 242 A.3d 177. A material fact has the potential to influence the outcome of the case; and a genuine issue of material fact exists if the factfinder must decide between competing versions of the truth. *Lewis v. Concord General Mut. Ins. Co.*, 2014 ME 34, ¶ 10, 87 A.3d 732. The record is assessed for sufficiency—not persuasiveness—such that a court can

3

make a factual determination without speculating. *Estate of Smith v. Cumberland County*, 2013 ME 13, ¶ 19, 60 A.3d 759.

## DISCUSSION

In their Motion, VIP seeks summary judgment on Counts I and II which each assert negligence claims against them. Count I alleges an ordinary theory of negligence while Count II raises a common carrier theory. The difference being that the duty of care imposed on a common carrier is heightened, requiring VIP's actions to be more than just "reasonable in light of the apparent risk." *Alexander v. Mitchell*, 2007 ME 108 ¶ 15, 938 A.2d 1016. Since the difference between the two counts is the duty of care imposed, Rickett's two Counts pleading negligence are addressed together below.

### I. Negligence

To survive a defendant's motion for a summary judgment in a negligence action, a plaintiff "must establish a prima facie case for each of the four elements of negligence: duty, breach, causation, and damages." *Quirion v. Geroux*, 2008 ME 41, ¶ 9, 942 A.2d 670.

### A. Duty

Whether a duty of care is owed is a question of law which the court may resolve at summary judgment. *Denman v. People's Heritage* Bank, 704 A.2d 411, 413 (Me. 1998). A duty is "an obligation, to which the law will give recognition and effect, to conform to a particular manner of conduct toward another." *Mastriano v. Blyer*, 2001 ME 134, ¶ 12, 779 A.2d 951 (quoting *Quadrino v. Bar Harbor Banking & Trust Ca.*, 588 A.2d 303, 304 (Me. 1991)).

A common carrier owes its passengers a duty that requires "'the exercise of the highest degree of care compatible with the practical operation of the machine in which the conveyance was undertaken. *Id.* ¶ 13. (quoting *Chaput v. Lussier*, 132 Me. 48, 52, 165 A. 573, 575 (1933)).

4

This heightened standard of care continues until the carrier has given its passenger a reasonably safe discharge at a reasonably safe location. *Id.* This rule "establishes a bright line dividing the primary obligation of common carriers to provide a safe discharge, and the primary obligation of passengers to accept personal responsibility for their own safety." *Id.* ¶ 15.

In this case, the parties do not dispute whether VIP owed a duty to Rickett and the other passengers on board, they instead dispute the extent of that duty. VIP claims that their duty of care "ended" as soon as Rickett passed onto property either not owned by them or not considered part of the drop off location. Rickett claims that VIP's duty as a common carrier extended beyond her discharge from the bus and that the duty to provide a reasonably safe discharge in a reasonably safe location encapsulates her foray onto the gravel footpath adjacent to the parking lot, and onto the stairs. Thus, the parties do not argue over whether VIP had a duty, but how narrowly that duty should be defined. They thus conflate the elements of duty and breach.

This is a common occurrence when summary judgment motions are being litigated as parties seeking to avoid liability often attempt to gerrymander themselves out of the imposition of a duty by narrowly defining the duty owed so that it does not encompass them. *See* Restatement (Third) of Torts § 7, cmt. i. note (Am. Law Inst. 2010); *see also Marshall v. Burger King Corp.*, 856 N.E.2d 1048, 1061 (Ill. 2006) ("[T]o the extent defendants suggest we could create a rule of law narrower than the [duty] discussed above to absolve them of liability, they are actually requesting that we determine, as a matter of law, that they did not breach their duty of care.")

For example, here, VIP attempts to define its duty under the law as a duty to discharge a passenger from their bus into a commonly used tour bus parking lot without injury. Rickett defines VIP's duty as one to discharge an elderly passenger into a well illuminated parking lot

5

which has multiple clear, stable, and unobstructed pathways to the adjacent restaurant. Both parties attempt to impart case specific facts into the duty determination. Such an exercise thwarts the flexible nature of the duty of care concept and could result in "an infinite number of duties." *See Marshall*, 856 N.E.2d at 1061. *See also* John C. P. Goldberg & Benjamin C. Zipursky, *The Restatement (Third) and the Place of Duty in Negligence Law*, 54 VAND. L. REV. 657, 712-717 (2001). While such particularized statements of the requisite duty of care may be comprehensible, the duty imposed on an alleged tortfeasor must remain general in nature and avoid conclusions about the facts of a particular case. *See Marshall*, 856 N.E.2d at 1061.

In this case, the Court avoids any fact specific duty determinations and asks simply, whether the alleged tortfeasor, as a matter of law, had "an obligation to conform to a particular manner of conduct towards another." *Quadrino*, 588 A.2d 303, 304 (Me. 1991). VIP, an owner and operator of a commercial bus line, is a common carrier under Maine law. *See In re United Parcel Service Inc.*, 256 A.2d 443, 447 (Me. 1969) (holding that a common carrier is one who holds himself out as engaged in the public service of carrying goods or people for hire). Thus, the manner of conduct owed by VIP to Rickett was a duty to exercise the highest degree of care compatible with the practical operation of a bus, providing her with a reasonably safe discharge in a reasonably safe location. This Court refuses, as a matter of law, to contour VIP's duty to fit the specific factual circumstances before it.

## B. Breach, Causation, Damages

The remaining elements of the tort of negligence are fact intensive in nature. And, as such, summary judgment can only be granted if the record presents no genuine issues of material fact as to their existence. Here, the record generates genuine issues of material fact as to all three.

6

Regarding breach of duty, the record presents several factual issues as to whether VIP's decision to drop Rickett and the others in the Pilot House Lot was reasonable. There are properly supported allegations that all the passengers were older and thus more prone to injury, it was dark, the parking lot was poorly lit, there was no easy path to take when walking to the restaurant, and the bus driver knew the steps were uneven. On the other hand, there are allegations that tour buses always park in the Pilot House Lot, any other mode of access to the restaurant was unreasonable, and that all the passengers were of good health and mobility. Thus, the Court cannot say — beyond any genuine dispute of fact — that VIP did not breach its duty

The record also generates genuine issues of fact as to causation and damages. Namely, on causation, whether the driver's decision to disembark passengers in the Pilot House Lot was the proximate cause of Rickett's injury. *See Holmes v. E. Me. Med. Ctr.*, 2019 ME 84, ¶ 17, 208 A.3d 792. (""Proximate cause is that cause which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury, and without which the result would not have occurred."). And on damages, what Rickett's damages — besides some sort of bodily injury — were.

Because the record generates genuine issues of material fact as to breach, causation and damages, summary judgment may not be entered in favor of Defendant VIP.

**Entry is:**

Defendant's Motion for Summary Judgment is Denied.

The clerk is directed to incorporate this order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated: 5/13/22

John O'Neil Jr

Justice, Maine Superior Court

Entered on the Docket: 5/17/2022

STATE OF MAINE                              SUPERIOR COURT
CUMBERLAND, ss.                             CIVIL ACTION
                                            DOCKET NO. CV-19-499

JUNE RICKETT                          )
                                      )
        Plaintiff                     )
                                      )
        v.                            )  ORDER    ON    THIRD    PARTY
                                      )  DEFENDANT'S    MOTION     FOR
VIP TOUR AND CHARTER BUS COMPANY      )  SUMMARY JUDGMENT
                                      )
        Defendant and Third Party     )
        Plaintiff                     )
                                      )
        v.                            )
                                      )
JEANNE LEWAND                         )
                                      )
        Third Party Defendant         )
                                      )
                                      )
                                      )

REC'D CUMB CLERKS OFC
MAY 13 '22 4H11:24

Before the Court is Third Party Defendant Jeanne Lewand's ("Lewand") Motion for Summary Judgment. For the reasons set forth herein, the Motion is GRANTED.

## FACTUAL BACKGROUND

This case arises out of a slip and fall event which occurred on October 10th, 2017, at Federal Jack's Restaurant located in Kennebunk, Maine. Plaintiff June Rickett ("Rickett") and Third Party Defendant Jeanne Lewand ("Lewand") are longtime residents of California. (Third Party Defendant's Statement of Material Facts ("TPD S.M.F. ¶¶ 1-2)). Rickett and Lewand were part of a group of thirty to forty female friends that traveled to Maine in October of 2017. (TPD S.M.F. ¶ 4.) Lewand, who organized much of the trip, chose Maine as the destination, and collected money from the women for payment. (TPD S.M.F. ¶¶ 5-6.) She also helped plan much

1

of the itinerary and secure a group fare for their air travel. (Third Party Plaintiff's Statement of Material Facts ("TPP's S.M.F.") ¶ 55.)

Lewand and a few friends who were also trip participants traveled to Maine a few days before the rest of the group. (TPD S.M.F. ¶¶ 8-9). Plaintiff June Rickett ("Rickett"), and the other women, arrived a few days later. (TPD S.M.F. ¶¶ 8-9). Upon Lewand's early arrival, she rented a car and traveled to Maine for a few days, staying at a friend's camp. (TPD S.M.F. ¶ 8.)

To transport the group, Lewand reserved a bus owned by Defendant and Third Party Plaintiff VIP Tour and Charter Bus Company ("VIP"). (TPD S.M.F. ¶ 10.) The bus was scheduled to pick up Rickett and the others at Logan airport when they arrived. (TPD S.M.F. ¶¶ 8-9). Lewand's plan was to return her rental car to Logan airport on the day the group arrived and ride the VIP bus to Maine with them. (TPD S.M.F. ¶ 9.)

To reserve the Bus, Lewand communicated with VIP Vice President Jason Briggs ("Briggs"). (TPD S.M.F. ¶¶ 11, 13.) Briggs asked Lewand for contact information, the group's arrival date and a rough itinerary. (TPD S.M.F. ¶ 14.) He did not ask whether anyone in the group had any ailments he should be aware of. (TPD S.M.F. ¶ 15.) Based on the information Lewand provided to Briggs, he prepared a quote and sent it to Lewand for review. (TPD S.M.F. ¶ 18.) Once Lewand approved of the quote, she made a payment and VIP sent her a confirmation invoice. (TPD S.M.F. ¶¶ 19-20.) This agreement was final and was considered a contract by VIP. (TPD S.M.F. ¶¶ 19-20.) Lewand's itinerary included a stop on the first night at Federal Jack's, a Kennebunk restaurant which said that it could accommodate a party of thirty to forty. (TPD S.M.F. ¶¶ 26-28.) Lewand chose Federal Jack's for the group's first dinner after identifying the restaurant through an internet search and calling to make a reservation. (TPD S.M.F. ¶¶ 27-28.)

2

When she made the reservation, Lewand did not discuss parking options for the VIP Bus. (TPD S.M.F. ¶¶ 26-28.)

On October 10th, 2017, when Rickett and the others arrived at Logan Airport, the group of approximately thirty women boarded the VIP Bus which Lewand reserved. (TPD S.M.F. ¶ 45.) The driver noted that all of the passengers were mobile and seemed to "get around fine." (TPD S.M.F. ¶ 45.) Lewand was not on the VIP Bus when it departed Logan airport, as when Lewand attempted to return her rental car, she missed the airport's exit and was stuck in traffic. (TPD S.M.F. ¶¶ 34-35.) She instead met up with the group when the bus reached Kennebunk. (TPD S.M.F. ¶ 35.) In Lewand's absence, she designated another woman on the bus to be in charge. (TPD S.M.F. ¶ 39.)

The Bus driver had a copy of the itinerary Lewand prepared for the women that listed the first stop as Federal Jack's restaurant located at 8 Western Avenue in Kennebunk. (TPD S.M.F. ¶ 48.) VIP policy required that its drivers followed the itinerary they were given, utilizing their discretion as to how the bus could best access certain destinations. (TPD S.M.F. ¶ 49.) Thirty to forty five minutes before the bus approached Federal Jack's, the bus driver called the restaurant to seek guidance on where he should park. (TPD S.M.F. Ex. E. 5.; TPP's S.M.F. ¶¶ 10-13.) The manager on duty instructed the driver to pull into Federal Jack's parking lot in front of the brewery, an area that is well-lit and has an elevator for patrons who are less mobile (TPD S.M.F. Ex. E. 5.; TPP's S.M.F. ¶¶ 10-13). Another possible drop off location was on Route 9 in Kennebunk, at the intersection of Federal Jack's Driveway and Route 9. (TPD S.M.F. ¶ 31.)

When the bus arrived at the restaurant, the bus driver dropped the women in a parking lot northeast of, and adjacent to, the building in which Federal Jack's was located. (TPD S.M.F. ¶ 50.) This parking lot had an address different from Federal Jack's restaurant. (TPD S.M.F. ¶ 51.)

Nobody on the trip, neither Lewand, nor the woman she had asked to take charge, instructed the VIP Bus driver to drop them off in this parking lot. (TPD S.M.F. ¶¶ 75-78.) This constituted a deviation from the itinerary. (TPD S.M.F. ¶¶ 75-78.)

To travel from this parking lot to the restaurant, there were a couple of options. (TPD S.M.F. ¶ 52.) One option was a gravel pathway that led to a set of stairs. (TPD S.M.F. ¶ 53.) The stairs at the end of the path were uneven in riser height and lacked illumination and handrails. (TPD S.M.F. ¶ 54.) Rickett exited the bus, walked the gravel path, tried to ascend the stairs, and fell. (TPD S.M.F. ¶ 55.)

Two years after the trip, Rickett sued multiple defendants in Cumberland County Superior Court seeking redress for injuries she sustained because of her fall. As of September 23rd, 2021, the only Defendant remaining was VIP. The crux of Rickett's negligence claim against VIP is as follows:

> VIP . . . made the choice to let us off in a dark parking lot rather than pulling up the restaurant front door. The front of the restaurant . . . was flat, level and well-lit, and it would have been easy to enter the restaurant. But the bus driver chose to stop in a parking lot that was poorly lit. It was hard to know where we were supposed to go, and the route to the restaurant required climbing uneven stairs in the dark.

(TPD S.M.F. ¶ 57.)

In November of 2020, VIP filed a third party complaint against Lewand, in which it alleges that to the extent Rickett is entitled to recovery from VIP, VIP is entitled to contribution Lewand for her share of Rickett's damages. (TPD S.M.F. ¶ 58.) Specifically, VIP claims that because Lewand organized the trip, she "assumed a duty to ensure the safety of the participants on the trip." (TPD S.M.F. ¶ 60.)

4

On October 28th, 2021, Lewand filed the instant Motion for Summary Judgment. VIP filed their opposition on November 19th, 2021, and Lewand replied on December 15th. Lewand's Summary Judgment Motion, now fully briefed, awaits this Court's decision.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when review of the parties' statements of material facts and the record evidence demonstrate that there is no dispute over any genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Beal v. Allstate Ins. Co.*, 2010 ME 20, ¶ 11, 989 A.2d 733. A fact is material if it can affect the outcome of the case. *Dyer v. DOT.*, 2008 ME 106, ¶14, 951 A.2d 821 (citation omitted). A genuine issue of fact exists when "sufficient evidence requires a fact-finder to choose between competing versions of the truth at trial." *Parrish v. Wright*, 2003 ME 90, ¶ 8, 828 A.2d 778 (citation and quotation omitted).

To withstand a motion for summary judgment, the non-moving party must establish a prima facie case for each element of the claim. *Watt v. UniFirst Corp.*, 2009 ME 47, ¶ 21, 969 A.2d 897 (citation omitted). Although summary judgment is usually inappropriate for deciding factual issues, it is appropriate "if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Flaherty v. Muther*, 2011 ME 32, ¶ 51, 17 A.3d 640 (citation and quotation omitted). In testing the propriety of a summary judgment motion, the facts are considered in the light most favorable to the non-moving party. *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63 (citation omitted).

## DISCUSSION

5

In her Summary Judgment Motion, Lewand seeks judgment foreclosing her potential liability (in tort) to Rickett. This question of Lewand's liability to Rickett is raised because of VIP's third party complaint seeking contribution.

At the outset, the Court notes that the relevant relationship for the purpose of this summary judgment analysis is Lewand and Rickett's. It is not, as VIP occasionally contends in their third party complaint, VIP and Lewand's. *See Thermos Co. v. Spence*, 1999 ME 129, ¶ 21, 735 A.2d 484. ("The adjudication of negligence, causation, and damages form the foundation of a contribution action. Put another way, the determination of liability of one tortfeasor to another actually turns on the relationship between the *original injured party and the contribution defendant and not on any relationship between the parties to the contribution action.*" (emphasis added)). Thus, whether Lewand owed a duty to VIP is not relevant here.

## I.    Lewand's Negligence

To survive a third party defendant's motion for a summary judgment in a negligence based contribution action, a third party plaintiff must establish, as to the original injured party, a prima facie case for each of the four elements of negligence: duty, breach, causation, and damages." *Quirion v. Geroux*, 2008 ME 41, ¶ 9, 942 A.2d 670.

### A. Duty

Whether a duty of care is owed is a question of law which the court may resolve at summary judgment. *Denman v. People's Heritage* Bank, 704 A.2d 411, 413 (Me. 1998). A duty is "an obligation, to which the law will give recognition and effect, to conform to a particular manner of conduct toward another." *Mastriano v. Blyer*, 2001 ME 134, ¶ 12, 779 A.2d 951 (quoting *Quadrino v. Bar Harbor Banking & Trust Ca.*, 588 A.2d 303, 304 (Me. 1991)).

6

Answering the question of whether a duty exists is "guided by the general principles of duty" with a particular emphasis on "foreseeability." *See Brown v. Delta Tau Delta*, 2015 ME 75 ¶ 14, 942 A.2d 670. "In analyzing those claims that do not rest on well-established notions of duty, or that seek to expand duty into new areas, determining when a duty will be imposed requires the analysis of multiple factors." *Alexander v. Mitchell*, 2007 ME 108, ¶ 16, 938 A.2d 1016. Although the foreseeability of an injury is a foundational consideration, it is never the sole determinant of duty. *Id.* The court also considers societal expectations regarding behavior and individual responsibility in allocating risks and costs, and considers "'the hand of history, our ideals of morals and justice, the convenience of administration of the rule, and our social ideas as to where the loss should fall." *Id.*

In her Motion, Lewand argues, beyond any dispute of fact, that she did not owe a duty to Rickett. In response, VIP argues that Lewand did because she organized the trip Rickett was on. In support of their contention, VIP cites case law from other jurisdictions which, they say, establishes a travel agent, or trip organizer's duty of care to customers. *See Wilson v. American Trans Air, Inc.*, 874 F.2d 386, 390 (7th Cir. 1989); *Passero v. DHC Hotels and Resorts, Inc.*, 981 F. Supp. 742, 746 (D. Conn. 1996); *see also Furuoka v. Dai-Ichi Hotel (Saipan), Inc.*, 2002 MP 5, ¶ 31, (N. Mar. I. 2002); *Fling v. Hollywood Travel and Tours*, 765 F. Supp. 1302, 1305 (N.D. Ohio 1990); *Lavine v. General Mills, Inc.*, 519 F. Supp. 332, 336, 338 (N.D. Ga. 1981). As Lewand points out, the problem with VIP's citations and other cases addressing a travel agent's duty in tort, is that such cases address whether a travel agent has a duty to warn travelers of certain risks associated with travel destinations and other amenities. They do not specifically address whether a general duty of care is owed by the agent or operator to customers.

7

However, a close reading of *Wilson*, *Passero*, and other relevant cases suggest that a general duty of care does exist. Each of these cases stand, at least implicitly, for the proposition that tour operators have a duty to use reasonable efforts to investigate the safety and security of their customer's destination. This duty is then heightened to one of "specific inquiry" and a subsequent "duty to warn," if certain circumstances exist which call the safety of the destination into question. *See Wilson*, 874 F.2d at 390.

VIP also claims that Lewand's decision to have trip participants sign a liability waiver, was "an acknowledgement that Lewand's actions triggered a duty of care to Rickett" and shows that the harm Rickett suffered was "expressly contemplated by the parties prior to the trip." VIP's latter contention, deeming the waiver as an "express" contemplation of the harm Rickett suffered, is a generous description of the waiver's contents. The waiver states, in relevant part:

> In consideration of the risk of injury while participating in trip to Maine on October 10 through October 17, 2017, and as consideration for the right to participate in the activity, I hereby, for myself, my heirs, executors, administrators, assigns, or personal representatives, knowingly and voluntarily enter into this waiver and release of liability and hereby waive any and all rights, claims or causes of action of any kind whatsoever rising out of my participation in the activity and do hereby release and forever discharge Jeanne Lewand, Patty Giesea, Robin Lang, Assistance League of Santa Ana, Located in Santa Ana California, 92705, their affiliates, managers, members, agents, attorneys, staff, volunteers, heirs, representatives, predecessors, successors, successors and assigns, for any physical or psychological injury, including but not limited to illness, paralysis, death, damages, economical or emotional loss, that I may suffer as a direct result of my participation in the aforementioned activity, including traveling to and from an event related to this activity.
>
> . . .
>
> I acknowledge that this activity may involve a test of a person's physical and mental limits and may carry with it the potential for death, serious injury, and property loss. The risks may include, but are not limited to, those caused by terrain, facilities, temperature, weather, lack of hydration, condition of participants, equipment, vehicular traffic and actions of others, including but not to participants, volunteers, spectators, coaches, event officials and event monitors, and or producers of the event.[1]

---

[1] The full text of the waiver is set forth in exhibit three, attached to exhibit seven to VIP's opposition. The relevant portion of the waiver is extracted here.

8

(Def.'s Opp. Mot. S.J. 11.) While this comprehensive language may be read to cover Rickett's fall on the steps outside Federal Jack's, it does not expressly contemplate such an occurrence.

Nonetheless, the existence of a waiver does factor into a duty analysis as it provides some evidence of the foreseeable nature of Rickett's harm. However, as the Law Court instructed in *Alexander*, foreseeability is but one "factor" to consider when a party seeks to expand a duty into new areas. *See Alexander*, 2007 ME 108, ¶ 16, 938 A.2d 1016.

In Maine, a distinct duty of care has never been imposed on travel agents or trip coordinators. Since this is the case, this Court must not only consider foreseeability, but also "'the hand of history, our ideals of morals and justice, the convenience of administration of the rule, and our social ideas as to where the loss should fall." *Id.*

Although reaching an answer based on this vague guidance may seem inappropriate at the summary judgment stage — where any genuine dispute of material fact requires denial — the existence of a duty is a question of law. Accordingly, the Court holds here, as a matter of law, that Lewand did owe a general duty of care to Rickett. This duty is the same as any general tort duty — "one of reasonable conduct in the light of the apparent risk." *Id.* ¶ 15; *c.f. Furuoka*, 2002 MP 5, ¶ 35, (N. Mar. I. 2002) ("We conclude that a travel agent has a duty to disclose known, or reasonably ascertainable, material information to the traveler unless that information is so clearly obvious and apparent to the traveler that, as a matter of law, the travel agent would not be negligent in failing to disclose it.").

This holding is consistent with The Law Court's instruction in *Alexander* as absolving any travel agent, trip organizer, or tour operator of a duty to act reasonably would offend certain notions of fairness and social ideas about where the loss should fall. If one — or multiple —

9

travelers trust an agent with coordinating their trip, that agent must, at the very least, perform her duties in a reasonable manner. If she does not, she must bear the burden of any resulting injury.

Accordingly, as the principal organizer of Rickett's 2017 trip to Maine, Lewand did in fact owe her a duty in tort.

## B. Breach of Duty

To survive summary judgment, VIP must next show that the summary judgment record generates a genuine dispute of fact as to whether she breached that duty. They cannot do so.

When Lewand made a dinner reservation at Federal Jack's in Kennebunk for the first night of her group's trip to Maine, she did so after identifying Federal Jack's as a potential dining option on the internet, and calling to inquire about their capacity. Feeling assured that the restaurant had sufficient space to accommodate her group, she then made a reservation. This conduct was, beyond any genuine dispute of material fact, "reasonable, in light of the apparent risk." *Alexander*, 2007 ME 108, ¶ 15, 938 A.2d 1016. The summary judgment record produces no evidence that the risk of Rickett encountering uneven steps and a poorly illuminated and supported walkway was "apparent" to Lewand. Accordingly, it was not necessary for her to warn Rickett of the potential danger of the premises or be on the bus to ensure her safe passage over the gravel path.

Lewand fulfilled her duty to Rickett and other passengers by identifying a place for trip participants to eat, securing transportation from Logan International Airport to the restaurant and providing the bus driver with an address and location for drop off. The duty of care imposed on her required no more.

Because VIP, as a third-party plaintiff, cannot establish a prima facie case of breach, it cannot survive Lewand's summary judgment motion on their one count complaint alleging

10

contribution. Accordingly, summary judgment is entered in favor of Third-Party Defendant Lewand.

**Entry is:**

Third Party Defendant's Motion for Summary Judgment is Granted.

The clerk is directed to incorporate this order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated: 5/13/22

_____
John O'Neil Jr.
Justice, Maine Superior Court

11